OF

## PENNSYLVANIA.

2 W   45
e 31 SC ² 22

2w    45
39SC ³430

SOUTHERN DISTRICT, SEPTEMBER TERM 1833.

## Clippinger *against* Creps.

If a creditor, by any contract which can be enforced against him at law or in equity, gives time to his debtor, he discharges the surety.

A judgment, being a lien on the land of a freeholder, takes away that right of freehold which entitles the possessor to a stay of execution on a judgment before a justice of the peace.

The acceptance of a judgment before a justice of the peace by the payee of a note, against a principal payer upon whose freehold there are liens, with a stipulation that he shall be entitled to a stay of execution, is a release of a surety in that note.

ERROR to the common pleas of *Cumberland* county.

This was an action by David Creps against John Clippinger, co-promisor with John Cring in a joint and several note.

The defence was, that after the note became due, the plaintiff David Creps, and John Cring the principal (John Clippinger being a surety) went before a justice of the peace, and Cring there confessed a judgment for the amount of the note, *with a stay of execution for one year.* That at that time Cring's freehold was incumbered by a mortgage in favour of John Clippinger to an amount equal to its value.

The defendant requested the court to charge the jury that these facts in law released the surety. To which they answered :

" Admitting all the facts in this case, Creps took a judgment against Cring the principal in the note before justice Redett, on the terms prescribed by the law.

"It was taken promptly by consent. The year's stay of execution is allowed by law, and it would have required a waiver on the part of the defendant to dispense with it. ' The holder of the note was only required to prosecute his claim in the ordinary way prescribed by law. He was not bound to any selection of any particular tribunal.

" The defendant, being a freeholder though incumbered, by the laws regulating the stay of execution before two justices, in this case, was entitled to a year. ' Suppose Creps had selected the common pleas in place of a justice of the peace : we know he could not have obtained judgments, adversely, within a year. Two modes of proceeding were presented to Mr Creps, either in court or before a justice. He selected the prompt and easy mode, and the one probably presenting to him the most likely means of recovery. If he was honestly mistaken, would such mistake release the bail ? Surely not."

This answer was the error alleged.

*Biddle*, with whom was *Williamson*, for the plaintiff in error.

There are two grounds for reversing the judgment in this case. 1st. The plaintiff below took an amicable judgment from the principal in the note before a justice of the peace, for a sum above 100 dollars, without consulting the surety. 2d. He stipulated with the principal for a stay of execution for a year.

Any agreement of the principal parties, inconsistent with the terms of the original agreement, or any alteration in the mode of performing them, discharged the surety. *Theobald on Principal and Surety* 119, 120. So any act of the party to whom the promise is made, which tends to increase the risk of the surety, or defeat his remedy, puts an end to his liability. *Fell on Guar.* 194 ; *Theobald on Principal and Surety* 122. And the question in such case is, whether, by the act or agreement, the surety *might have been prejudiced*, and not whether he was in fact injured. Moore *v.* Bowmaker, 7 *Price* 223. In the present case, Creps, the plaintiff, took from Cring the principal, whose estate was incumbered to its full value, a judgment by confession, for the amount of the note, 172 dollars, and stipulated for a year's stay of execution. It is true the fourteenth section of the act of 1810, *Purdon's Digest* 500, gives cognizance to justices of the peace for sums exceeding 100 dollars, if the parties voluntarily appear before them, and provides that no execution shall issue for a year, if the defendant be a *freeholder*, the sort of freeholder not being specified. If by freeholder is meant every one owning real estate, whether incumbered or not, the risk of Clippinger was materially increased by this resort to an extraordinary tribunal ; for had the proceeding been in court (the ordinary mode), judgment would have been had at the second term, and execution could have issued imme-

[Clippinger v. Creps.]

diately, as the privilege of a freeholder does not extend there to persons whose estates are incumbered.　But by the mode adopted, no recourse could be had for a year to the personal property of Cring, which was the only available fund he had.　Under any aspect of the case, as this was a proceeding out of the ordinary course, between Creps and Cring, without consulting Clippinger, he is discharged. The business of collecting money from the principal debtor, is as much the duty of the surety as of the person to whom it is payable. *Fell on Guar.* 199.　He, the surety, has a concern in every transaction with the principal debtor.　You cannot keep him bound and transact his affairs, for they are as much his as the obligee's, without consulting him.　Rees *v.* Berrington, 2 *Ves. Jun.* 540.

2d.　The stipulation for a year's stay of execution discharged Clippinger.

By the act of 1724, 5 *Purdon's Dig.* 56, which relates to proceedings in court, freeholders are particularly described.　The real estate necessary to giving them privilege must be " clear estate ;" any incumbrance defeats the privilege.　Fitler *v.* La Breure, 1 *Serg. & Rawle* 17; Toy *v.* Simpson, 1 *Serg. & Rawle* 363; *Supreme Court* 1820, *MS.* Had this agreement to give a year's stay been in court, there can be no question the surety would have been discharged.　Rathbone *v.* Warren, 10 *J. R.* 587.　But reliance is had upon the fact, that the word *freeholder* is used without qualification in the fourteenth section of the act of 1810, under which Creps took the judgment from Cring ; and that the latter was consequently entitled to the stay given, although his estate was incumbered.　The description of a freeholder in Pennsylvania, given in the act of 1724—1725, shows clearly the intention of the legislature in other acts, where they speak of freeholders generally.　The practice under the act of the 21st of March 1806, *Purdon's Dig.* 58, is to issue a *capias* against a defendant whose estate is incumbered, although that act directs a *summons* to issue where the party is a " freeholder."　What places the matter in a still stronger light is, that in the tenth section of the act of 1810, the act relied on by the defendant in error, it is expressly stated, " no judgment, whether obtained before a justice or in any court of record within this commonwealth, shall deprive any person of his right as a freeholder *longer than such judgment shall remain unsatisfied ;*" showing conclusively to whom they intend a freeholder's privilege to extend.　Besides it would be most incongruous to give a defendant the right of a freeholder before a justice for an amount exceeding 100 dollars, when at the same time it would be refused to him in our courts.

*Devor* and *Alexander,* for defendant in error.

The opinion of the Court was delivered by

ROGERS, J.—If a creditor, by any contract which can be enforced against him at law or in equity, gives time to his debtor, he dis-

charges the surety; for if, notwithstanding such contract, it were competent to sue the surety, the latter would immediately have his remedy over against the debtor.   This would be in fraud of the contract of forbearance, which the creditor would thereby indirectly defeat.   The doctrine that if the creditor gives time to the principal debtor, the surety is discharged, was first introduced in courts of equity.   It was founded on this principle, that every surety has a right to come into a court of equity, and require to be permitted to sue in the name of the creditor.   If, then, the creditor gives time to the principal debtor, or does any act which alters the situation of the parties, he prevents the surety from using his name with effect.   And the law is the same even when the arrangements may be for the benefit of the surety, for he stands upon his contract, and is discharged from all obligation, if any alteration is made in it without his consent.   How then does this case stand, on the facts which were in evidence.   John Clippinger, the defendant, was the surety in a note given by himself and John Cring to the plaintiff.   The plaintiff and the  principal debtor, without the consent of the surety, enter an amicable action, before a justice of the peace, in which the defendant confesses a judgment with a stay of execution for twelve months.   It was a proceeding under the fourteenth section of the act of 20th March 1810.   The act provides, that " a justice of the peace shall take cognizance of any matter or thing, made so by the act (20th March 1810) for any sum exceeding 100 dollars, if the *parties voluntarily* appear before him for that purpose, and shall proceed to the recovery thereof, by entering judgment if confessed, or if submitted to him by reference ; but no execution shall issue before the expiration of one year from the date of such judgment, if the party defendant be a *freeholder*, or shall have entered special bail, &c."   At the time the judgment was entered by the justice, the real estate of Cring, the principal debtor, was incumbered by mortgage, to an amount exceeding its value.   The argument is, that the surety has no cause to complain, because this was a proceeding warranted by an act of assembly, and that no greater advantage was given by the creditor than the debtor had a right to claim.   The soundness of this argument may be well questioned.   It may admit of doubt, whether a debtor, whose estate is incumbered to an amount greater than its value, is a freeholder within the meaning of the act, and as such, entitled to a stay of execution for twelve months.   At common law, an estate of freehold, *liberum tenementum*, a frank tenement, is defined by *Britton* to be the possession of the soil by a freeman.   And *St Germyn* tells us, "that the possession of the land is called, in the law of England, the frank tenement, or freehold." At common law, he who has the actual possession of land for life, or a greater estate, is a freeholder.   But that is not the sense in which the term *freehold* is understood in the act of assembly.   We must have recourse to other acts of assembly in which the term is used and defined.   The act of the 20th March 1725 speaks of a freeholder,

[Clippinger v. Creps.]

as one who is an inhabitant of the commonwealth, having resided therein for the space of two years, who has thirty acres of land, in fee simple, well settled, twelve whereof, or more well cleared or improved; or one who hath a dwelling house, with fifty pounds and clear estate, or who hath unimproved lands worth fifty pounds. Such estate must be a clear estate. It has always been held, that an incumbrance, to any amount, takes from him the privilege of the exemption from arrest given him by the act referred to.

When a subsequent act dispenses with bail from a freeholder, which it exacts from others, we are to take it, that the legislature has reference to freeholders as understood in the statute. And this view of the case derives force, from the tenth section of the act of 1810. "No judgment, whether obtained before a justice, or in any court of record of this commonwealth, shall deprive any person of his or her right as a freeholder, longer or for a greater time than such judgment shall remain unsatisfied ; any law, usage or custom to the contrary notwithstanding." This provision would be unnecessary, on the supposition that the debtor was entitled to a stay of execution, whether his estate of freehold was incumbered or not. The section marks the understanding of the legislature, that a judgment deprives the holder of real estate of the privilege conferred by the act, as long as it remains unsatisfied. It revives only when the incumbrance ceases to exist, nor can I perceive what security is afforded to the creditor by a freehold incumbrance to an amount greater than its value. Nor is the law unreasonable, as, in such cases, all that is required is special bail, which is exacted from others.

But the surety is discharged from the contract on other grounds. A surety has a right to come into a court of equity, and require to be permitted to sue in the name of the principal debtor. In the case at bar, Clippinger would have a right to demand the use of the judgment confessed before the justice. He has a direct interest in it, and should have been consulted before any such proceeding was had. It must be remembered, that the justice has no jurisdiction, except by consent. The proceeding is not compulsory, but voluntary, and *non constat*, if Clippinger had been consulted, he would have consented to the confession of judgment before a justice, or before the justice. The course pursued is an anomaly unknown to the common law, and only adopted in this state. When, therefore, the act requires consent to give jurisdiction, it must mean the consent of all who are to be affected by it. It is no answer to say that, in this case the surety is not injured. Supposing the fact to be so, yet the surety has a right to say, I stand upon my contract, which you have undertaken to vary without my consent. He is placed in a different situation, without his consent, from that in which he placed himself when he entered into the contract.

Judgment reversed.