## WRIGHT v. BARTLETT.

Where the statute of limitations is sought to be avoided by a new promise, the plaintiff may still count on the original contract, although the new promise be conditional.

If the suit be against two or more makers of a joint promisory note, it is no defense that one of them, upon whom the process was not served, might, in another jurisdiction, avail himself of the statute of limitations.

An agreement by the creditor with the principal, upon good consideration, to extend the time of payment without the surety's assent, will operate to discharge such surety; although the principal be still at liberty to pay the debt at any time.

Such an agreement, in consideration of extra interest paid in advance, although with a condition that if the principal pay before the expiration of the extended time there might be a deduction on the extra interest, is binding on the creditor.

Where a surety acknowledged that the debt was not paid, and that he was held for it, unless the principal was or should be discharged by the creditor;—*held*, that taking of the principal extra interest within the jurisdiction where the note was to be paid, and which entitled the principal there to a deduction of three times the amount of such extra interest, from the sum due, was a discharge *pro tanto*, within the terms of such acknowledgement.

The provision of the law of Massachusetts, entitling the debtor, when sued for the debt, to a deduction of three times the amount of the extra interest paid by him, is a matter relating only to the remedy, and can not be enforced here.

ASSUMPSIT upon two promisory notes made at Lowell, Massachusetts, by one Case as principal, and the defendant as surety, for $2000 each, and payable to the testator, or order, in one year, with interest. Upon Case there was no service, and Bartlett, in a brief statement filed with the general issue, set up the statute of limitations; a discharge of the surety by giving time to the principal; and a claim to deduct from the sum due three times the amount of usurious interest paid by Case.

To prove a new promise by Bartlett, the plaintiff read an agreement by him, dated August 3, 1856, acknowledging that the two notes on which he was surety had never been paid, and that he was held for the same, unless the said Case should pay them, or unless Case was or should be discharged by said Wright. The suit was brought August 20, 1860.

On the trial at the October term, 1861, said Case was examined by the defendant as a witness, and he testified that the defendant was but a mere surety; that he, the said Case, paid ten per cent interest for the money, in advance, and that in November, 1851, he paid said $80, four per cent extra interest, for six months from September 4, 1851, in advance, and that Mr. Wright then agreed that the note might lie six months longer, and if he, said Case, paid it sooner, there might be a deduction on the extra interest made; and that he paid $400 extra interest in all, of which he did not inform Bartlett till after this suit was commenced. He also testified that the notes were signed in Kingston, N. H., but that the money was received in Lowell. The defendant also put in evidence the statute of Massachusetts relating to usury.

The court ruled that the usury in Massachusetts could not be set up here so as to entitle the defendant to a deduction of three times the illegal interest; and upon the request of the defendant to order a verdict for one side or the other, and report the evidence for the consideration of the court, the court ordered a verdict for the plaintiff, subject to the opinion of the court.

*Perley* (with whom were *Marston & Collins*), for the plaintiff.

*Christie* (with whom were *Tuck & French*), for the defendant.

BELLOWS, J.   It is objected that the promise of the defendant, being conditional, should have been declared on specially, and that the proof does not support a count on the original promise; but we think the law is settled the other way in this State. *Betton* v. *Cutts,* 11 N. H. 170; *Titus* v. *Ash,* 21 N. H. 129, 144; Ang. on Lim. 249. Upon showing, then, that the condition was complied with, the debt against the defendant would be revived, and the making of the note by Case being shown, a joint promise was established; and it would avail nothing to show that, in another jurisdiction, Case might set up a defense personal to himself. But there was evidence, we think, tending to prove an agreement, by the plaintiff, to give indulgence to the principal for the period of six months; and this would bind the plaintiff, notwithstanding the debtor retained the right to pay within that time. Such an agreement, upon good consideration, like a covenant to forbear to sue the principal, or to stay execution for a certain period, would tie the hands of the creditor and discharge the surety. It is urged that such ought not to be the effect where the principal retains the right to pay the debt at any time, upon the ground that it still leaves with the surety the power to pay the debt and take measures for his indemnity. If the taking away this power was the sole ground for the rule which discharges the surety, as might be inferred from some of the adjudged cases, there would be great force in the suggestion; but we apprehend that the doctrine stands upon a much broader foundation, namely, that the surety by an agreement accessory to the principal obligation, having undertaken to be responsible for the performance by his principal of a specific agreement, can be held for no other;

and therefore any alteration in its terms, without his assent, by which the obligation of the principal is discharged, or modified so as to extend the time of payment, or otherwise change the contract, will have the effect to discharge the surety. Nor is it any answer to say that the creditor alone is bound by the change, and that the principal still retains the right to perform the agreement as originally made; because when originally made, the principal was bound to perform it according to its terms, and the creditor has no right to release that obligation, or to do what in principle is the same thing—extend the time of its performance—without the surety's assent. The surety is willing to be bound for his principal for the length of time agreed upon; and it may fairly be assumed that he is so, upon the faith that the principal whom rests the duty and obligation, will at maturity discharge it. An agreement, therefore, between the creditor and principal, to release wholly or suspend for a time this obligation, without the assent of the surety, would be entirely unjust, and inconsistent with the principles which govern this relation. It is true that the surety can not require of the creditor any active diligence in pursuing the principal, but he has a right to require of him that he shall neither tie up his own hands, or release or suspend the obligation of the principal, without the surety's assent.

Upon these principles it is laid down in *Miller* v. *Stewart*, 9 Wheat. 685, per *Story*, J., that to the extent and manner, and under the circumstances pointed out in his obligation, the surety is bound, but no farther; and it is not sufficient that he may sustain no injury by the change in the contract, or that it may even be for his benefit, for he has a right to stand upon the very terms of his contract, and a variation is fatal. These principles are fully recognized in Ch. on Bills 409, and cases cited, where it is said that the reason why the surety is discharged is, that by the agreement for indulgence the principal is rendered less active in endeavoring to pay the debt, than if he continued liable to an immediate action. The same doctrine is recognized in Ch. on Con. 465, and notes; *Rees* v. *Berrington*, 2 Ves. Jr. 540, and notes; *English* v. *Darley*, 2 B. & P. 61; *Claridge* v. *Dalton*, 4 M. & S. 226; *Hewitt* v. *Goodrich*, 2 C. & P. 468; *Orne* v. *Young*, Holt N. P. C. 84; Chitty on Bills 413, and notes; *Hall* v. *Cole*, 4 A. & E. 577. In this case a *cognovit* was taken, by which time was given to the principal; and it was held that the surety was discharged. To the same effect is *Isaac* v. *Daniel*, 8 A. & E. (N. S.) 500, where, after a suit was commenced, the plaintiff, for a sufficient consideration, agreed to stay all proceedings for two months; and it was held that the surety was discharged. So is 3 Stark. Ev. 1389, note 1, where it is said that an agreement to stay execution three months will discharge a surety, citing *Ward* v. *Johnson*, 6 Munf. 9; 2 Am. L. C. 415, 417, and cases cited; and 2 Am. L. C. 428, citing *Clippinger* v. *Creps*, 2 Watts 45. See, also, *Wheat* v. *Kendall*, 6 N. H. 504; *Savings Bank* v. *Colcord*, 15 N. H. 119; *Watriss* v. *Pierce*, 32 N. H. 514. In *Hoyt* v. *French*, 24 N. H. 198, it is said that both the creditor and principal must be bound by the agreement for indulgence, in order to discharge the surety;

but the remark was made in respect to a case where the only consideration for the promise to wait, was the payment of interest, and this the debtor did not agree to do; but we think no such doctrine can apply when the agreement to forbear is under seal, or upon sufficient consideration independent of the contract itself, as in the case before us. In such cases no good reason is perceived why the debtor must also be bound to wait.

It is urged, also, that the proof went to show that the debtor might pay at any time, in which case a deduction should be made on the extra interest paid, the effect of which might be that all would be refunded. Supposing this to be true, we think there was sufficient consideration for the plaintiff's promise, notwithstanding there was a condition annexed to his holding the money. Still it was in fact paid, and he was entitled to hold the whole, unless the debtor paid the debt before the expiration of six months. For that he agreed to give time, and we think is bound by it.

It is immaterial that the benefit to the plaintiff, or the disadvantage to the debtor, might be slight. The $80 was then paid, and the plaintiff was entitled to hold it, in whole or in part, unless the debtor immediately paid the entire debt. For thus paying the $80, and for the chance of holding it, the plaintiff chose to extend the time of payment, and we can not say, as matter of law, that he valued this chance too high. Ch. on Con. (9th Am. Ed.) 28, 32. So, although the extra interest paid might all be recovered back, upon the ground that it had been illegally extorted; Ch. on Con. 554, and cases cited; *Willie* v. *Green*, 2 N. H. 333; yet the payment of such illegal interest, and even the promise to pay it, is decided to be a good consideration for an agreement to extend the time of payment. *Bank* v. *Woodward*, 5 N. H. 99; *Wheat* v. *Kendall*, 6 N. H. 504.

It is further urged, that the new promise of the defendant was upon a new consideration, and therefore he is, upon the doctrine of *Bank* v. *Colcord*, bound, although he had no notice of the agreement for indulgence; but we can not so regard it. On the contrary, the instrument is but an acknowledgement of a subsisting liability, upon the condition that Case was still liable, and should continue to be so; and upon this acknowledgement a promise might be inferred. In other words, it is an acknowledgement that he is still held as surety.

There being evidence, then, upon which the jury might have found a valid agreement to extend the time of payment, the verdict directed for the plaintiff must be set aside. It is true that the verdict was ordered at the request of the defendant, but, in the absence of any further qualification, it must be deemed to stand upon the ordinary ground of a verdict directed by the court.

A farther question has been raised, which, as it is likely to arise upon another trial, we have considered, and that is, the effect of the payment of illegal interest by the principal, giving him a right, in Massachusetts, to a deduction of three times the amount. This is urged by the defendant's counsel as a discharge of Case to the extent of $1200, which is said to be three times the amount of the

illegal interest, within the meaning of the defendant's memorandum, relied upon as a new promise, to avoid the statute of limitations. This illegal interest was paid in Massachusetts, where the notes were made, and to be paid; and in their construction, and also in their discharge, so far as depends upon facts occurring there, they are to be governed by the laws of that State. *Bliss* v. *Houghton*, 13 N. H. 126; *Ward* v. *Howe*, 38 N. H. 35; Story on Conf. of Laws 272, 276; 2 Kent Com. 459; *Bryant* v. *Edson*, 8 Vt. 325.

The memorandum of the defendant was, in effect, that he was held for the notes, unless Case should pay them, or unless he has been or shall be discharged by the plaintiff. It appears that the plaintiff did receive of the debtor, Case, in Massachusetts, illegal interest to the amount of $400, and that, by the laws of that State, in case of a suit there, he would be entitled to a deduction of three times that sum, amounting to $1200; but the provisions of that law, relating only to the remedy, can not be enforced here; *Watriss* v. *Pierce*, 32 N. H. 582; *Gale* v. *Eastman*, 7 Met. 14; although it would be otherwise where the *lex loci* made the usurious contract void.

The question then is, whether transactions voluntarily entered into by the creditor with the principal, by which the latter is enabled to defeat a suit against him in the jurisdiction where the contract was to be performed, either as to a part or all the claim, and this effect being known to the creditor, can be deemed to be a discharge of the principal in whole or in part, within the meaning of the defendant's memorandum. It is quite clear that it would not, technically considered, be a discharge, but the effect would nevertheless be the same; and, from the nature of the arrangement, we think that the term was not used in its technical sense, but would embrace any agreement or act of the plaintiff, voluntarily entered into, with a knowledge of its effect, that should in any form extinguish the obligation of the principal, or enable him to avoid it, by proceedings either in law or equity. It would not, of course, embrace a case where the creditor, by simply being passive, had enabled the principal to plead the statute of limitations; nor would it probably reach the case where some act of the creditor, not affecting the debtor's liability in the jurisdiction where the contract was to be performed, might still constitute a defense in another jurisdiction. But however this may be, the act of the plaintiff which knowingly arms the principal with a defense to his claim in the jurisdiction where the performance was to be had, is wanting in good faith to the surety, and may well be deemed a discharge of the principal *pro tanto*, within the terms of the contract here set up.

By our law, when three times the amount of the unlawful interest exceeds the sum lawfully due, the defendant may avail himself of a plea in bar generally, upon the ground that the whole debt is forfeited; and even where the amount to be deducted is less than the sum due, the plea may be with a general verification, with a view to an issue as at common law. *Gibson* v. *Stearns*, 3 N. H. 195; *Divoll* v. *Atwood*, 41 N. H. 446, and cases cited. We are therefore brought to the conclusion that the taking of usury, as stated, and

thus entitling the principal to a deduction in the jurisdiction where the notes were to be paid, must be regarded as a discharge of the principal *pro tanto.*

A question has been made as to the sufficiency of the defendant's promise to revive the debt, if the condition is complied with; but we think, as it contains a distinct acknowledgement of an existing debt that he is held to pay, there can be no doubt, upon our authorities, of its sufficiency as evidence of a conditional promise.

Another question has been raised as to the effect of the payment of the extra interest at the commencement of the loan, but regarding it as unlikely that it will be again presented in its present shape, we have not considered it.

With these views there must be

*A new trial granted.*