## Tompkins v. O'Shea

*J. A. Rydesky*, for plaintiff.
*Edwin W. Tompkins*, for defendant.

BAIRD, P. J., May 20, 1935.—On February 19, 1935, the plaintiff caused a capias ad respondendum to be issued against the defendant, and upon presentation of affidavit to hold to bail, the court fixed the bail at $1,000. The sheriff took the defendant into custody the same day, and on the following day he gave bail in the required sum with E. E. Nuschke as surety.

On February 27, 1935, the defendant presented a petition, alleging in substance, inter alia, that he is a freeholder and has a dwelling worth £50 current money in America, located on First Fork, Grove Township, Cameron County, Pennsylvania, that said property is worth $900, is held by him in fee simple and is clear of encumbrances, and praying for a rule to show cause why said capias should not be abated and quashed; whereupon a rule to show cause was granted and service thereof accepted by plaintiff's attorney; an answer was filed by plaintiff denying that defendant is a freeholder or the owner of any real estate in this Commonwealth, but admitting that he is the owner of a dwelling house of the value of $900, erected upon land owned by others under an oral lease subject to termination at any time at the will of the owners of the fee.

Depositions were taken in support of the petition, and they show that the defendant is a tenant of the owners of the land at his own will at an annual rental of $12, and that he has the right to remove his dwelling house from the premises at any time he chooses to do so. His petition is drawn under the Act of March 20, 1725, 1 Sm. L. 164, sec. 1, which provides as follows:

"No freeholder, inhabiting in any part of this province, who hath resided therein for the space of two years, and has fifty acres of land, or more, in fee-simple, well seated, and twelve acres thereof, or more, well cleared or improved, or hath a dwelling-house worth fifty pounds current money of America, in some city or township within this province, clear estate, or hath un-

improved land to the value of fifty pounds like money, shall be arrested or detained in prison by any writ of arrest, or *capias ad respondendum*, in any civil action, unless it be in the King's case, or where a fine is or shall be due to the King, his heirs or successors; or unless they be such freeholders as by this act are made liable to be arrested".

It is agreed by counsel for the parties that the only question for decision is whether the defendant is such a freeholder as is exempt from arrest on a capias ad respondendum in a civil action, within the meaning of this act, it being conceded by the plaintiff that the defendant had resided in this State for more than 2 years at the time the writ issued, and the undisputed testimony being that his dwelling house is worth $900, and that it is not encumbered in any way.

The precise question has never been decided in any reported case, but in interpreting the word "freeholder" as used in section 9 of the Act of March 20, 1810, 5 Sm. L. 161, relating to stay of execution it was held in Clippinger v. Creps, 2 Watts 45, 48, that it was to be presumed the legislature intended it to be understood as it was defined in the Act of 1725. In that case the Supreme Court said:

"At common law, he who has the actual possession of land for life, or a greater estate, is a freeholder. But that is not the sense in which the term freehold is understood in the Act of Assembly. We must have recourse to other Acts of Assembly in which the term is used and defined. The act of the 20th March, 1725 speaks of a freeholder, as one who is an inhabitant of the Commonwealth, having resided therein for the space of two years, who has thirty acres of land, in fee-simple, well settled, twelve whereof, or more, well cleared or improved; or one who hath a dwelling-house, with [worth] fifty pounds and clear estate, or who hath unimproved lands worth fifty pounds. . . .

"When a subsequent act dispenses with bail from a freeholder, which it exacts from others, we are to take it, that the legislature has reference to freeholders as understood in the statute."

From this language it seems clear that the Supreme Court interpreted the Act of 1725 as defining the word "freeholder", and as thus defined it embraces one who "hath a dwelling-house with [worth] fifty pounds . . . clear estate", as certainly as it does the other classes of persons who are exempted from arrest by said act.

Singer Sewing Machine Co. v. Follett, 39 Pa. Superior Ct. 429, and Timinski et ux. v. Meskinis et ux., 16 D. & C. 635, following Clippinger v. Creps, supra, also refer to the Act of 1725 as defining the word "freeholder."

Under the heading of "Dwelling or Dwelling House", in 19 C. J. 843, it is said:

"The words are not free from ambiguity, and are of multiple meanings, which vary with the sense in which they are used. Many definitions have been given in adjudicated cases, and they are not entirely harmonious. The usual line of demarcation has been the use to which the building is devoted as a habitation for man; but the particular meaning intended to be expressed by it when used in a given instance, may be rendered obvious by the context or attendant circumstances; and usually resort must be had to those aids to interpretation to ascertain what is meant. In its broadest significance the word denotes a building used as a settled human abode; and, in common parlance, when not qualified, conveys the notion of a home".

The depositions sufficiently show that the dwelling house of the defendant is actually used by him as a home for himself and family, and in interpreting the meaning of the phrase "hath a dwelling-house" in the act, it is significant that the words are not qualified as are the words "has fifty acres of land, or more," by the addition of words "in fee-simple" or any other words descriptive of the kind

of estate a dwelling house owner must have therein, except that it must be clear.

Now, May 20, 1935, being of opinion that the defendant is a freeholder as defined by the Act of 1725, the rule to show cause why the capias in this case should not be abated and quashed is made absolute.