## Sterling *versus* The Commonwealth.

1. Under the Act of 13th June, 1836, " relating to the support and employment of the poor," the proceedings to secure property for the benefit of the wife, after desertion by her husband, may be instituted on an information made by a single director of the poor.   Per LOWRIE, C. J.

2. In a proceeding against a husband who has deserted his wife, under the Act of 13th June, 1826, it is too late, after a hearing on the merits, to set aside the warrant for a mere defect of form.   Per AGNEW, J., Quarter Sessions, approved by Supreme Court.

3. It is not necessary that the wife and child should be declared paupers, in due form of law, to authorize proceedings to seize the husband's property, for her maintenance, under the Act of 13th June, 1836.   Id.

4. The fact of the charge of desertion, to enable the seizing of the husband's property, under the Act of 13th June, 1836, does not pass into judgment before the two justices, but comes up, on return of the warrant, before the Quarter Sessions, for final decree.   Id.

5. The reasonable cause which relieves a husband from a warrant, under the 29th section of Act of 13th June, 1836, is such only as will relieve him from the legal duty of maintenance.   Id.

6. The husband can only be relieved from the maintenance of his wife, for reasons or causes that would entitle him to a divorce.   Id.

7. The Act of 9th March, 1855, relative to divorces, was intended to extend the jurisdiction of the courts, but not to change the causes as then existing.   Id.

8. The terms " goods and chattels," in the Act of 13th June, 1836, do not include *choses in action;* hence, they cannot be seized on a warrant against a husband for deserting and refusing to maintain his wife.   Id.

9. A lease for years is a chattel real, in possession, and is subject to levy and sale on a *fi. fa.*, at common law, and hence may be seized on a warrant against the husband, for deserting and refusing to maintain his wife, under Act of 13th June, 1836.   Id.

CERTIORARI to the Court of Quarter Sessions of *Beaver county*.

This case arose under the Act of Assembly of 13th June, 1836, entitled, "An Act relating to the support and employment of the Poor."

On the 16th September, 1857, Robert Potter, *one* of the "Directors of the Poor, and of the House of Employment of the county of Beaver," made information, before two justices of the peace of said county, that William R. Sterling, the plaintiff

[Sterling v. The Commonwealth.]

in error, had separated himself from his wife, Matilda Sterling, and deserted her and his small child, leaving her and it a charge on the county. Whereupon, on the same day, said justices issued their warrant to said directors of the poor, &c., therein authorizing them to take and seize so much of the goods and chattels, &c., of said Sterling, &c. The warrant was returned, executed, by seizing the goods, chattels, *choses in action*, lease of office from Gilleland, &c., of said Sterling.

On the hearing, defendant objected to the jurisdiction, on the ground that the information was made by one only of the directors, whereas, it should have been made by a majority of them, and that there was no proper case made out for sustaining the warrant and seizure.

The court, AGNEW, J., filed the following opinion :—

" The defendant in this case, presented his petition, traversing the matters set forth in the warrant of the two magistrates, and praying to be heard, and that the complainants be put to their proofs ; upon which leave was granted by the court to be heard, and a hearing had of the proofs in denial, and in support of the matters traversed.

" It is too late, after a hearing on the merits, (if, indeed, we could at all, in this proceeding,) to set aside the warrant upon a mere defect of form. The objection, that the written complaint, on which the warrant issued, was in the name of but one of the directors of the poor, is cured by the joinder of a majority of the board in its execution. This is evidence of a prior assent to the complaint, and of a subsequent ratification, which should save the proceeding from a technical objection, after a hearing on the merits.

" The objection, that Mrs. Sterling and her child were not, in due form of law, declared paupers, upon a preliminary proceeding, and committed to the custody of a constable, to be conveyed to the poor-house, is not substantial. There is nothing in the 29th section of the Act of 13th June, 1836, requiring a previous order of two justices, declaring the wife and child paupers. The act provides, that, upon separation from the wife, and desertion of the child, the two magistrates shall issue their warrant, upon the complaint of the overseers of the poor. This complaint implies a hearing of the matters complained of, and those are, the separation or desertion of the husband, or father, and that he has left his wife or child a charge upon the district. Consequently, the two magistrates decide the question of charge, before issuing the warrant, which would be unnecessary, if the fact had been previously determined. Besides, if a previous decision were necessary, then has the defendant no remedy in the present proceeding. For no appeal having been taken from such previous order, had one been made, the order

unappealed from, would be conclusive evidence of the fact of charge, upon the hearing before the justices who issued the warrant now before us. But it has been settled by decision, that the husband, or father, is entitled to a hearing before the Quarter Session, into which the warrant is returned. *Overseers* v. *Smith*, 2 S. & R. 363; *Commonwealth* v. *Nathans*, 2 Barr, 140. Now, the very ground of those decisions is, that the fact of the charge has not passed into judgment, but comes up on a return of the warrant before the Quarter Sessions for a final decree. It is, therefore, obvious, from the terms of the law, and the construction put upon it, that the primary hearing is that only wherein the two magistrates make their order on the complaint of the overseers.

"We come, then, to the merits. The reasonable cause which relieves a husband from a warrant, under the 29th section of the Act of 1836, it is clear, is such only as will relieve him from the legal duty of *maintenance*, for this it is the object of the law to enforce. But what will relieve a husband from maintenance, other than a cause of divorce? Without such cause, he must maintain his wife. It is only such a cause as will discharge the legal duty.

"There is no evidence in this case, that Mrs. Sterling deserted her husband, wilfully and maliciously; but he, seizing the occasion of her temporary absence on a visit, forbade her return; and even after she had, by the advice of friends, gone back into her own house, refused to cohabit with her, and had since wholly separated himself.

"There being no desertion on her part, a reasonable cause for his separation must be sought for in her treatment of him. But what is the legal character of this treatment, as a ground of divorce? Under the Act of 1854, it must be '*cruel and barbarous*.' This is the only treatment acknowledged by the law, on part of a wife.

"On the part of the husband, by the Act of 1815, not only cruel and barbarous treatment, *but such indignities to her person*, as to render her condition intolerable, and life burdensome, are a cause of divorce to the wife. But the Act of 8th May, 1854, extended the jurisdiction in case of divorce, to cases 'where the *wife* shall have, by *cruel and barbarous* treatment, rendered the condition of her *husband* intolerable, or life burdensome.' Though the phraseology is manifestly adopted from the Act of 1815, the provision, as to indignities to the person, &c., is omitted, and the cause of divorce confined to cruel and barbarous treatment.

"The Act of 9th March, 1955, is *pari materia*, and its object is, plainly, to confer jurisdiction where the causes of divorce, on part of either, arose in another State, and not to change the

causes, as then existing. It is clear, the legislature did not intend, in the Act of 1855, to substitute, as causes of divorce, the well-defined expressions, 'cruel and barbarous treatment, and such indignities to the person,' &c., in the Acts of 1815 and 1854, by the now indefinite and more general terms, 'personal abuse, and such conduct as renders life burdensome,' but simply to rehearse existing causes in this comprehensive way, in order to reach the object of the law, by giving jurisdiction, 'notwithstanding the parties were, at the time of the occurring of the said causes, domiciled in another State.' "

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

" The remaining question is, whether Mr. Sterling left his wife a charge upon the county. On this point, the evidence presented - the most difficulty; but a careful review leads to the conclusion that he did.

"It is clear from the evidence, he made no provision in fact for their maintenance. There is not a single instance of actual provision after the final separation. It is true he has paid a coal and a meat bill. But this he did not, because of his own order, but in compliance with a liability the law cast upon him. It is not in evidence he ordered a single article for them. It is true, necessaries were furnished by Gilliland and others, and that Sterling knew and did not forbid it, but all unite in saying it was not because of his request, but of his wife's, and because these necessaries would not be refused to her. In acquiesing in these transactions, Sterling but recognised a legal obligation, from which he could not escape.

"Thus, having made no provision for her and the infant at her breast, they of necessity became a charge. If she took articles on his credit, it was but optional on the part of those who gave them, and on her part, to take. They might decline to give, and she to receive. It was but an imperfect mode of resorting to that right of maintenance, which it is the object of this proceeding to enforce. Having made no provision, he cannot complain that the law steps in to compel him to do that which he has left undone.

"Availing himself of her casual absence, he forbade her return. What had she then? A carpet-bag, with but a portion of her apparel. Where shall she find a shelter? His letter says at the house of her friends. If she obtained a roof, it was not by his act but her own. If she obtained wherewithal to live, it was not his voluntary provision, but by her grasp upon his purse. She has nothing, and he left her nothing. She is therefore a charge.

" What he left her, was but a *power* to procure, and this proceeding is the legal means of enforcing it.

"As to the subjects of the seizure, we may add, that the terms

[Sterling *v.* The Commonwealth.]

goods and chattels, in the Act of 1836, do not include *choses in action.* These terms were adopted from the Act of 1771, as stated by the revisors of the civil code. The same language is used in the Act of 1803, in the consolidation of the poor laws of Philadelphia; but the supplement to the latter act provides for seizing rights and credits, as well as goods and chattels; and a further supplement of 1814, provides a mode of rendering available the seizure of rights and credits by attachment and proceedings against the garnishees. Previous to the acts providing for the sale of stocks on execution and for execution attachment against debts, none but *choses in possession* were the subject of levy and sale upon a *fi. fa.* The act relating to executions, was passed the 16th June, 1836, and that relating to the poor, on the 13th of the same month, and were parts of the revised code. It is not possible, therefore, with all the laws before them, that the revisors considered the terms, 'goods and chattels,' as including rights and credits. But a lease for years is not a *chose in action;* it is a chattel real in possession, and the termor is said to be possessed of his term. It was subject to a levy and sale on a *fi. fa.* at common law. 3 Black. Com. 417; *Dalzell v. Lynch,* 4 W. & S. 255. It can be sold without inquisition and no deed, nothing but the sheriff's return on his writ, accompanying the evidence of title; nor is the act for levying lands in execution applicable to it." *Vide Somers* v. *Vie,* 2 Harris, 99.

The court therefore sustained the warrant and proceedings, and decreed against the husband for the sum of $300 annually for the support of the wife, and $75 annually for their child; and this is the error complained of.

*Cunningham, Clarke,* and *Taylor,* for plaintiffs in error.— The court should have dismissed the proceedings, on the ground that the information on which the justices issued their warrant, was not by the directors or a majority of them, but by Robert Potter, a single director. 29th section of Act of 13th June, 1836; Act 29th March, 1851, P. L. 260. The oath is essential to this proceeding, and it is essential to this proceeding that it should be made in the manner pointed out by law. *Overseers* v. *Smith,* 2 S. & R. 363; *Commonwealth* v. *Nathans,* 2 Barr, 138; *Kemp* v. *Kennedy,* 1 P. C. C. R. 36; *Jones* v. *Jones,* 2 Jones, 355; *Granite Bank* v. *Treat,* 9 Shep. (Maine) R. 340; *Barrett* v. *Crane,* 16 Verm. 246; *Ford* v. *Babcock,* 1 Denio, 158; *Bennett* v. *Birch,* Id. 141; *Snediker* v. *Quick,* 1 Green, (N. J.) 306.

*Chamberlin, Roberts,* and *Cuthbertson,* for defendant in error, referred to Act, 29th March, 1854, P. L. 1851, p. 264, § 3; 29th sec., Act of June, 1836; 3 S. & R. 117; 9 Barr, 217; Angell & Ames on Corp. §§ 278-282; *Osbond* v. *Bank U. S.,* 9

[Sterling *v.* The Commonwealth.]

Wheat. 752; *McHenry* v. *McCall,* 10 Watts, 471; *Claghorne* v. *Cullen,* 1 Har. 139; 12 Wheat, 70; 12 S. & R. 421; *M'Lean* v. *La Fayette Bank,* 3 M'Lean, 384; 7 U. S. Dig. 326; 7 Hill, 39; 15 Ohio, 483; *Zion's Church* v. *St. Peter's Church,* 5 S. & R. 217; *Brown* v. *School Directors,* 6 Har. 79; 3 W. & S. 273; *Rank* v. *Rank,* 5 W. & S. 215; 6 N. H. 232; 12 Barb. 547; 11 Har. 171; 14 S. & R. 419.

The opinion of the court was delivered October 28, 1858, by LOWRIE, C. J.—We are cut off from the consideration of the careful and learned argument of the counsel, relative to the jurisdiction of this case by a previous question; the answer to which excludes it.

It is a postulate of the jurisdiction question, that the warrant of the justices could not properly issue, except on the oath of a majority of the directors of the poor. But such is not the meaning of the Act of Assembly. It means that the proceeding must be instituted at their instance. When instituted, the evidence must be satisfactory to the justices. If the directors be witnesses, they do not in this, act officially and jointly; for, as witnesses, they must act personally and severally. The warrant shows that the complaint was instituted by the directors. So does the complaint on oath; though we have doubts whether that is part of the record of the Quarter Sessions, for the law requires not it, but only the warrant, to be returned, and the return of the warrant gives the Quarter Sessions jurisdiction of the case.

In the late case from Delaware county, (*Jones* v. *The Commonwealth,*) the exceptions to the proceedings were very various; but there were none relating to the information before the justices, or to the sufficiency of the evidence in the Quarter Sessions. These were not there regarded as subject to review here. Certainly the evidence heard by the Quarter Sessions, is not part of the record here. We are, therefore, entirely unable to reach the two principal questions presented by the counsel for the plaintiff in error.

Proceedings affirmed, and record remitted.