THE STATE, JOHN GRIFFIN ET AL., PROSECUTORS, v.
PETER F. WANSER, MAYOR, &c., ET AL.

Commissioners appointed in any city under the provisions of the "Act pro-
viding for the formation and establishment of wards in cities of the
first class in this state," passed May 16th, 1894 (*Pamph. L., p.* 387), are
required to make division of the city into wards with regard to equal-
ity of population. *Held,* that a division which appears to have been
made with regard to the equality of the average total vote of the new
wards is not in compliance with the requirements of the act.

A *certiorari* allowed upon the prosecution of John Griffin
and others was directed to Peter F. Wanser, mayor of Jersey
City; John E. Scott, clerk of said city, and Henry H. Holmes,
and four other persons, commissioners appointed under the
provisions of the "Act providing for the formation and estab-
lishment of wards in cities of the first class in this state,"
passed May 16th, 1894 (*Pamph. L., p.* 387), and commanded
them to certify into this court the appointment of said com-
missioners and the maps and reports filed by them, with all
proceedings thereunder. The mayor and city clerk have
returned the appointment of said commissioners, their oaths
of office, one map showing the lines of wards and another
map showing the lines of election precincts, with the certifi-
cate of three of the commissioners upon each, a description
of the ward boundary lines and a description of the election
precinct boundary lines, each signed by the same commis-
sioners. The defendants, the commissioners, have returned
their acts and proceedings as they appear in the minutes of
their meetings, attested by their secretary.

Argued at November Term, 1894, before Justices DIXON,
MAGIE and LIPPINCOTT.

For the prosecutors, *William D. Edwards.*

For the defendants, *Spencer Weart* and *Gilbert Collins.*

The opinion of the court was delivered by

MAGIE, J. Several of the reasons filed by prosecutors attack the validity of the proceedings brought before us by this writ, upon the ground that the "Act providing for the formation and establishment of wards in cities of the first class in this state," passed May 16th, 1894, was obnoxious to constitutional prohibitions or had been repealed before these proceedings were taken.

Objections precisely similar have heretofore been considered by this court and declared to be without substance. *McLaughlin* v. *Newark, ante p.* 298. Therefore, those now made cannot prevail.

Of the remaining reasons filed by prosecutors, only one need be considered. That questions the validity of the acts of the commissioners in respect to wards, upon the ground that they, " in dividing Jersey City into wards, have not had regard to equality of population."

The above-mentioned act of May 16th, 1894, gives anthority to a mayor of any city of the first class to appoint five commissioners, whose duty shall be, after having taken a prescribed oath, to divide such city into wards. It expressly enacts that "all such wards shall be formed of contiguous territory, and in dividing the same the said commissioners shall have regard to equality of population."

The act further provides that the action of the commissioners is to be evidenced by maps defining the lines of wards, to be made and filed by the commissioners in the office of the city clerk, with a description of such lines, all to be attested and certified by the commissioners and to there remain of record.

The reason under consideration does not question the validity of the attestations and certificates of the commissioners, on the ground that they fail to show that the division of the city into wards had been made in accordance with these requirements of the act. As these commissioners were empowered to do certain acts in a prescribed mode, the well-settled rule, which requires such persons, when their acts are only

to be authenticated by their certificates, to show on the face thereof that they have strictly pursued their authority, may be applicable.   The rule is applied to the condemnation of lands (*Vanwickle* v. *Railroad Company*, 2 *Gr.* 162), to municipal acts and assessments (*State* v. *Jersey City*, 1 *Dutcher* 309; *State* v. *Jersey City*, 2 *Id.* 444; *Wilkinson* v. *Trenton*, 7 *Vroom* 499), to tax adjudications (*State* v. *Warford*, 3 *Id.* 207) and to the orders and returns in laying out roads (*State* v. *Van Gieson*, 3 *Gr.* 339; *State* v. *Bergen*, 1 *Zab.* 342), and it would not be easy to discover a reason for not applying a similar rule to the case in hand, where the certificates of the commissioners furnish the only record of their acts.

If this rule is applicable, it is obvious that the attestations and certificates of the commissioners, appearing in the return, are defective, and, upon proper objection, ought to be vacated on that ground, for they are entirely silent as to the principle on which the division into wards was made, and do not show that, in making such division, the commissioners had any regard to equality of population.

But, as before stated, this reason seems not to present this objection, but rather to assert that the commissioners, in making such division into wards, did not, in fact, have regard to equality of population as required by the act.   Defendants insist that it thus presents a question of fact, and, as prosecutors have taken no affidavits to establish the alleged breach of duty on the part of the commissioners, that it cannot prevail.

But proof by affidavits is unnecessary, if the fact is otherwise established.

In the minutes of the commissioners, kept by their secretary and returned in obedience to the command of this *certiorari*, it appears that, at a meeting on July 26th, 1894, they unanimously adopted the following resolution:

"*Resolved,* That for the purpose of conforming to the aldermanic requirements, the ward lines be drawn so as to form twelve wards as compactly and of as nearly an average total vote as possible."

No other action indicative of a change in the purpose declared in that resolution appears, and the division was made into twelve wards.

It thus appears that the ward lines were drawn so as to give to each ward as nearly as possible an equal average vote. This may have been a commendable purpose, inasmuch as it tended to produce equality of representation. But that was not the duty laid upon the commissioners by the act of the legislature. They were required to make their division with regard to equality of population, and that duty was not performed by making the division with regard to equality of votes.

It may be true, as argued, that the average vote of a locality bears some relation to its population, but that relation is not so certain or accurately known as to justify reliance upon it in determining the population of the locality.

The result is that the certificates and attestations appearing in this return must be vacated and set aside, with costs.