## Townsend *v.* Boyd, Appellant.

*Landlord and tenant—Ancient lease—Adverse possession—Presumption of grant—Mortgage.*

While a tenant is ordinarily estopped from denying his landlord's title, the rule does not apply to the case of one who comes into possession under a title proclaimed of record to be adverse to the landlord, and who continues in such possession for over sixty years, undisturbed by the landlord, or anyone claiming under him, and especially is this so when the alleged landlord's title is set up by a stranger.

Where a lease of land for 2,000 years was created in 1682, and thereafter for 145 years in all deeds, wills and other conveyances, the land was described as the residue of the 2,000 year lease, and in 1823, in partition proceedings, the allotments were made to the allottees in fee, and afterwards for sixty years all of the conveyances were in fee, and there was a continuous adverse possession against all the world, a sale in foreclosure proceedings under a mortgage given after that time will pass a title in fee, and such title will be good as against a purchaser at sheriff's sale of the unexpired term of the lease taken in execution as the alleged property of the mortgagor.

After a great lapse of time and a series of circumstances disclosing the enjoyment of an unchallenged title during such period, the courts will presume whatever grant may be necessary to quiet the title. It is not sufficient for a stranger to rest upon an ancient outstanding title.

A mortgagor cannot set up as a defense to the mortgage that he had no title to the premises, and this applies to anyone claiming title through the mortgagor.

Argued Feb. 11, 1907. . Appeal, No. 55, Jan. T., 1906, by defendant, from judgment of C. P. Del. Co., June T., 1902, No. 137, on verdict for plaintiffs in case of Joseph B. Townsend, Jr., and J. Barton Townsend, Executors of the last Will and Testament of Joseph B. Townsend, deceased, and Charles C. Townsend, substituted executor of said last Will in the place and stead of James P. Townsend, deceased, v. Matthew M. Boyd. Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Ejectment for land in Upper Chichester township. Before JOHNSON, P. J.

The facts are stated in the opinion of the Supreme Court.

At the trial the defendant presented the following points:

6. The defendant having acquired title to the leasehold by a sheriff's sale is entitled to retain possession in this proceeding, and the verdict should be in his favor. *Answer :* That is refused. We cannot say to you the verdict should be in favor of the defendant. It will be for you to say under all the circumstances. [5]

7. The mortgage of the plaintiffs being unrecorded in law and being a mere pledge of the land, with no transfer of possession to the mortgagee, is void, as against existing creditors, and it appearing by the uncontradicted evidence that the defendant was an existing creditor, said mortgage is fraudulent and void, as to him, and the defendant is entitled to your verdict. *Answer:* That is refused. The questions are for you under the instructions of the court. We cannot say, or do not say, to you who is entitled to the verdict. [6]

The court charged in part as follows:

[That if, from the evidence in the case, you find that there was a grant which has been lost from this old lessor in 1682 or his heirs, to the predecessors in title of Matthew Boyd, then your verdict should be for the plaintiff.] [7]

[Now as bearing upon the question of whether or not there was such a (lost) grant, we call your attention to the testimony

bearing upon that question—first, this was a leasehold, a tenancy. It was made in 1682 for 2,000 years. The consideration was, as you have been told, a peppercorn and so many shillings—five shillings. I believe it is for each 100 acres of land. Now you will say what bearing that has upon the question of presumption. There was a letting, a lease of 500 acres of land in the township of Upper Chichester to a son for 2,000 years, yielding and paying yearly during the said term unto William Withers, his heirs and assigns, one peppercorn at or upon the feast of St. Michael, the archangel, if the same be lawfully demanded. It was not to be paid outright, but it was to be paid if it should be demanded by the lessor, and also paying and discharging the aforesaid chief or quit rent of a shilling yearly as aforesaid, one shilling for each 100 acres. So you see the consideration of the old lease for 2,000 years, which was to a son, was, if the lessor should demand it, he should pay a peppercorn, and in addition one shilling for each 100 acres of land. You will say what bearing a lease for 2,000 years, for a nominal consideration, has upon the question whether or not, when in 1823 the owner of this land began to convey it in fee simple—whether it is reasonable to suppose that there was a grant to them and that it had been lost.] [8]

[When he (Erasmus Morton) died, the husband of one of his children, Thomas Marshall, came into court, in the (should be orphans' court) court of common pleas of Delaware county in 1823 and filed a petition to have this property of Erasmus Morton parted and divided. In that petition he set out that this land was real estate, and that Erasmus Morton died seized of it in fee, that is, had divided it—made a partition of it, as the lawyers say; and one of the heirs of Erasmus Morton was awarded a tract, I think of about forty-four or five acres, part of the land in dispute, out of the Erasmus Morton estate. It was awarded to one of the sons, Aaron Morton, and this court made a decree that he should take and hold that property—it was awarded to him—and that was in effect awarding the title to him absolutely.] [10]

[This tract was conveyed to Aaron Morton and Aaron Morton died. I think he died in Delaware. I am not sure. But before he died he made this will, in which he willed a portion

of this land, real estate ; he says : " I order and direct that
all my real and personal estate be sold by my executor either
at public or private sale, within one year after my decease,
&c., and I further authorize him to convey said real estate to
Matthew Boyd at the price of $4,400, say $1,400 in cash,"
and appointed John Larkin as his executor. So that this
heir of Erasmus Morton, Aaron, made his will on which he
recognized this property as real estate, and directed his exec-
utors to convey it to Matthew Boyd at a fixed price. John
Larkin made a deed in 1858—Morton died in 1857—in which
he conveyed this tract of land, forty-four acres, in fee, abso-
lute title, to the person named in the will, Matthew Boyd.] [11]

[Now the plaintiffs ask you to say as to this tract which is
included in the lands in dispute—ask you to say from this deed
of 2,000 years—this deed of 2,000 years to a son for a pepper-
corn which he should pay if it was demanded and a shilling
for every 100 acres, and from the fact that from 1831 down to
1892, when this land was mortgaged, all the owners of it con-
veyed it in fee simple, or if they died before conveying, willed
it, and that it was sold by those in power under their wills
and conveyed by the various assurances in fee simple, they
ask you to find from that that there was a grant to them
which has either been lost or mislaid. In other words, they
ask you to presume to find that there was such a grant, and
if you do find there was such a grant, then the plaintiffs are
entitled to your verdict.] [12]

[We also say to you that if the plaintiffs have for twenty-
one years and upwards—for more than twenty-one years be-
fore the bringing of this suit—or those under whom they claim,
did enter upon this land in hostility to the owner and did for
over fifty years, as it is in this case, occupy it adversely, hos-
tilely, exclusively as their own, then this plaintiff is entitled to
your verdict.] [13]

[Now if Matthew Boyd entered under the will of John Boyd
in part and the deed from his brother as to one tract and the
John Larkin deed upon the other, if he entered upon that
property, hostilely adversely, claiming to own it in fee simple,
and has continued to do that for twenty-one years and upward,
then this plaintiff is entitled to recover and in support of that
proposition as to the character of his holding—because we say

to you that if this entry was hostile, open, adverse possession, exclusive of the lessors, and it continued for upwards of fifty years, we say to you, that that gave Matthew Boyd a complete title to the land, he had a right to mortgage it and the plaintiffs are entitled to recover.] [14]

Verdict and judgment for plaintiffs.    Defendant appealed.

*Errors assigned* were (5–14) above instructions, quoting them.

*William B. Broomall,* with him *W. Roger Fronefield,* for appellant.—It is only where the possession and actions of one cannot be accounted for in any other way than by the presumption that a deed exists for the reversion, that the law will presume such a deed, to prevent injustice, but where his possession is accounted for, without such a presumption, no such presumption exists: Hastings v. Wagner, 7 W. & S. 215; Kingston v. Lesley, 10 S. & R. 383; Hasson v. Klee, 181 Pa. 117; Fox v. Thompson, 31 Pa. 172; Warner v. Henby, 48 Pa. 187.

A tenant is estopped from setting up against his landlord an adverse title acquired during his term: Galloway v. Ogle, 2 Binney, 468; Cooper v. Smith, 8 Watts, 536; Graham v. Moore, 4 S. & R. 467.

The deeds purporting to convey a fee were not for the benefit of the lessor, hence he is under no obligation to examine the record: Work v. Prall, 26 Pa. Superior Ct. 104; Henry v. Brothers, 48 Pa. 70; Warner v. Henby, 48 Pa. 187.

*Frank P. Prichard,* with him *George T. Butler* and *John G. Johnson,* for appellees.—The circumstances raise a presumption of a grant or extinguishment of the landlord's reversion prior to the partition proceedings, in 1823 and 1832: Jackson v. Hudson, 3 Johnson, 375; Hastings v. Wagner, 7 W. & S. 215; Taylor v. Dougherty, 1 Watts & Sergeant, 324; Carter v. Tinicum Fishing Co., 77 Pa. 310; Wallace v. Fourth Presbyterian Church, 111 Pa. 164; Fletcher v. Fuller, 120 U. S. 534 (7 Sup. Ct. Repr. 667); United States v. Chavez, 175 U. S. 509 (20 Sup. Ct. Repr. 159).

The rule that notice to the landlord of the adverse title may be presumed from facts and circumstances is especially true

in the case where the adverse possession is set up, not by the tenant himself, but by those who, through a series of conveyances having their origin in the tenant, have derived from him a title supposed and declared to be in fee : Dikeman v. Parrish, 6 Pa. 210.

By over sixty years' adverse possession, under a claim to own the land in fee, Matthew Boyd and his predecessors in title had acquired a fee simple title.   If as against the original landlord it should be held that he was estopped from setting up this title, such estoppel would inure only to the benefit of the landlord and those claiming under him.   As between a mortgagee and a subsequent execution creditor the latter, not having a landlord's right of estoppel, could not set up the unclaimed landlord's title to defeat the mortgage : Francoeur v. Newhouse, 43 Fed. Repr. 236 ; Northern Pacific R. R. Co. v. Kranich, 52 Fed. Repr. 911 ; U. S. v. Chavez, 175 U. S. 509 (20 Sup. Ct. Repr. 159).

OPINION BY MR. JUSTICE POTTER, April 1, 1907:

On November 16, 1892, Matthew Boyd gave a mortgage to Joseph B. Townsend to secure the sum of $13,000 upon a tract of 152 acres and a fraction, situate in Upper Chichester township, Delaware county.   On March 30, 1894, a writ of scire facias was issued under this mortgage in the court of common pleas of Delaware county, judgment entered for want of an affidavit of defense, and the mortgaged premises sold under a levari facias to the executors of the mortgagee, and a sheriff's deed made to them.   Notice was given and proceedings instituted by the purchasers to obtain possession of the mortgaged premises ; but Matthew M. Boyd, a son of the mortgagor, who was then in possession, made affidavit that he did not hold under Matthew Boyd, defendant in the judgment on the mortgage, but in his own right ; and he gave his recognizance to appear at court to plead to a declaration in ejectment, etc.   The present action was the proceeding in court, which was in effect an ejectment, with the mortgagees and purchasers at the sheriff's sale as plaintiffs, and the claimant as defendant.

Upon the trial the plaintiffs offered in evidence the record of partition proceedings in the estate of Erasmus Morton, de-

ceased, commenced October 29, 1823, whereby a lot of ground, including part of the premises here in dispute, was awarded to Aaron Morton. This was followed by other conveyances, all treating the title as a fee simple, which finally assumed to vest it as such in Matthew Boyd, on March 25, 1858. The remaining portion of the premises in dispute was traced from the record of partition proceedings in the estate of Nehemiah Broomall, deceased, begun on November 28, 1831, down through a chain, always treating the title as a fee, and assuming to vest it as such in Matthew Boyd, on March 21, 1865. Plaintiff offered in evidence the record of the mortgage of Matthew Boyd to Joseph B. Townsend, dated November 16, 1892, for $13,000, which was the basis of the proceedings out of which this controversy arises, together with the record of the foreclosure suit and judgment and the sheriff's deed to plaintiffs.

Plaintiffs then called as a witness John M. Boyd, a son of Matthew Boyd, who testified that his father had resided on the mortgaged premises for a period of fifty-six or fifty-seven years, and during all that time witness never heard of anyone claiming to have an interest in the farm except his father. Never heard it was leased until 1896 or 1897. His father paid the taxes on the farm, and he never heard of anyone else paying them. No one else resided on the farm except his father. Plaintiffs also offered the triennial assessments of the property from 1866 to 1895, which were admitted under exception. Their admission is the subject of the first assignment of error, but they are neither set out in the assignment nor printed in the paper-book. Plaintiffs also offered two satisfied mortgages, given by Matthew Boyd, which were admitted in evidence, subject to exception. The admission of these mortgages is the subject of the second assignment, but they are not set out.

In none of the papers offered in evidence by plaintiffs was there any reference to a lease, and in all of them the estate allotted, conveyed or mortgaged was assumed to be a fee. Defendant offered in evidence a lease, dated September 5, 1681, from William Penn to William Withers for 500 acres of ground, and a release of same dated September 6, 1681, reserving a quit rent of one shilling for every 100 acres. Also a discharge of accrued rent, dated July 6, 1681. Also a lease for the same tract of 500 acres from William Withers to Thomas Withers,

dated January 22, 1682, for a term of 2,000 years at an annual rental of " one pepper corne at or upon the feast of St. Michaell the Archangell, if the same be lawfully demanded, and also paying and discharging the aforesaid Chiefe or Quit Rent of one shilling yearly." This was followed by various conveyances, wills and mortgages of this tract and portions of it, in most of which the grant was for the rest of the term of 2,000 years under the above lease. This chain of title to the leasehold estate extended down to the titles of Erasmus Morton and Nehemiah Broomall, but when their estates were partitioned in 1823 and 1831 it was assumed in the proceedings that each owned a fee in the land.

Defendant also showed that Matthew Boyd, Jr., the defendant here and Martha J. Boyd, during the pendency of the foreclosure proceedings, entered judgments against Matthew Boyd and issued executions under which the sheriff of Delaware county levied upon the residue of the term of 2,000 years given under the lease of William Withers to Thomas Withers, and sold and conveyed the same to the defendant. Defendant then called one of his counsel who was a conveyancer, who testified that he had examined the title to the land in controversy, and that it was all included in the 500 acres covered by the Withers lease.

Under this testimony the court refused to give binding instructions for either plaintiffs or defendant, and submitted to the jury three questions: (1) Whether the property here in question was within the tract of land leased in 1682 by William Withers to Thomas Withers; (2) whether there had been a grant or extinguishment of the landlord's interest in favor of the predecessors in title, of Matthew Boyd; (3) whether there had been such adverse, hostile and exclusive possession, as to bar the setting up of the landlord's title by the defendant. The jury found for the plaintiffs, in a general verdict, and there is nothing upon the record to show upon which of the questions submitted, the verdict was based.

The title of Matthew Boyd, the mortgagor, to the mortgaged premises was, as we have seen, traced directly back to two proceedings in partition, in the orphans' court of Delaware county. One in the estate of Erasmus Morton in 1823, and the other in the estate of Nehemiah Broomall in 1831. It

was averred in the petitions for the inquests in these proceedings that each intestate died "seized in his demesne as of fee" of the land described, and the estates dealt with are throughout treated as freehold estates, and referred to as real estate and as that alone. The deed made by the administrators of Nehemiah Broomall to Robert Boyd, in pursuance of the sale under the partition proceedings, expressly undertakes to convey the fee. Aaron Morton, who took by allotment, and Robert Boyd, who took by deed, under the respective partitions, took "fee simple estates," or else they took nothing. The unexpired term of the Withers lease was personal property, and not susceptible of partition. The partition proceedings show no reference to any lease, and there was no apparent intention to deal in any way with a lease, and if there had been any such purpose, there was no jurisdiction in the orphans' court to make partition of personalty.

A leasehold interest is not real estate, but merely a chattel real, which is personal property : Dalzell v. Lynch, 4 W. & S. 255; Williams v. Downing, 18 Pa. 60; Kile v. Giebner, 114 Pa. 381; Sterling v. Com., 2 Grant, 162; Wells v. Becker, 29 Pa. Superior Ct. 174.

In Bismark B. & L. Assn. v. Bolster, 92 Pa. 123, Mr. Justice TRUNKEY said (p. 129): "A long term of years of very great value is not such an interest in land as is subject to the lien of a judgment; it is a chattel, subject to seizure and sale by a constable on an execution issued by a justice of the peace." In Brown v. Beecher, 120 Pa. 590, Mr. Justice CLARK said (p. 603): "But although the writing of February 3, 1882, is a lease, it conveyed to Marsh an interest in the land, a chattel interest, however; the lease was a chattel real but none the less a chattel."

If these predecessors of Matthew Boyd took estates in fee under the partition proceedings, then he also possessed the fee. But even if the partitions were void, the holdings of the parties were adverse to the rights of anyone claiming under the lease. During a period of over sixty years, all the wills, deeds and mortgages in the chain of title assumed to pass the fee and made no reference to any leasehold interest. For over thirty years prior to giving the mortgage, Matthew Boyd was in sole and undisputed possession of the

entire tract, paying taxes thereon and exercising all the rights of an owner. This was shown by the record evidence and by the testimony of the witness John M. Boyd, his son.

We can find no evidence that Matthew Boyd, or any predecessor in title since the partition proceedings, ever acknowledged the title of another to the land, but on the contrary they all actually claimed the title in fee simple, in themselves. The general principle that a tenant is estopped from denying his landlord's title is of course unquestioned. But in the present case Matthew Boyd, and his predecessors in title, took possession under a proceeding of record, in which the title was openly and avowedly claimed as a fee simple, and in absolute defiance of the claim of anyone in opposition thereto. And there is not a trace of any claim being made by anyone as landlord during a period of more than sixty years. The parties who took possession under the partition proceedings were fully justified in supposing that they were taking possession in fee. "Where one enters without knowledge of the tenancy, and irrespective of it, in the assertion of a title on its face adverse to the lessor, though derived, as here, from the tenant, his possession will be hostile, if unequivocal acts and declarations manifest an intention to hold in despite of all others. . . . Of the facts that have been recognized as indicative of hostile intent, none are perhaps more decisive than the exhibition of a paper title, independent of that residing in the original owner, by color of which the party justifies his entry:" Dikeman v. Parrish, 6 Pa. 210 (225).

We can see no evidence to sustain the claim that the relation of landlord and tenant ever existed between Matthew Boyd and the representatives of the lessor in the ancient lease which is here invoked to defeat his claim to a freehold estate. The defendant got more than he was entitled to, when the question of adverse possession was submitted to the jury. Under all the testimony, the court below might well have held the evidence of adverse possession to be conclusive.

Equally persuasive are the circumstances in raising a presumption of a grant or extinguishment of the landlord's reversion prior to the partition proceedings in 1823 and 1831. After a great lapse of time and a series of circumstances disclosing the enjoyment of an unchallenged title during such period,

the courts will presume whatever grant may be necessary to quiet the title. It is not sufficient for a stranger to rest upon an ancient outstanding title. In Jackson v. Hudson, 3 Johnson, 375, Chancellor Kent said: "If a defendant sets up an outstanding title existing in a stranger, it must be a present subsisting title; it must be one that is living and operating, otherwise the presumption will be that it has become extinguished." This language, was cited with approval by Chief Justice Gibson in Hasting v. Wagner, 7 W. & S. 215, where he said : "These presumptions conduce to repose, and there is a growing tendency to encourage them not only here, but elsewhere. In Jackson v. Hudson (3 Johns. Rep. 375), the Supreme Court of New York were of opinion that to constitute a defense in ejectment an outstanding title in a third person must be a present and operative one, else it will be presumed to have been extinguished only by a conveyance, and to whom ? Not to the defendant who does not pretend to claim under it, but to the plaintiff who has claimed the tract for thirty years and acted as the owner of it." The same chief justice in Taylor v. Douherty, 1 W. & S. 324 said, in referring to the case then before him : "We have the expenditure of money, not in a single contested act of ownership, but in acts repeated and persisted in for more than thirty years, as regards the ownership of the warrant, and without any adverse claim to it whatever. On every principle of authority and reason, this was sufficient not only to be left to the jury, but, in the absence of conflicting evidence, to command a verdict. The execution of a deed is presumed from possession in conformity to it for thirty years; and why the entire existence of a deed should not be presumed from acts of ownership for the same period, which are equivalent to possession, it would not be easy to determine." Many other cases to the same effect might be cited in support of this principle, such as Carter v. Tinicum Fishing Co., 77 Pa. 310; Brown v. Day, 78 Pa. 129; Wallace v. Presbyterian Church, 111 Pa. 164; Fletcher v. Fuller, 120 U. S. 534; United States v. Chavez, 175 U. S. 509. In the present case, under all these authorities, the evidence was, in our judgment, amply sufficient to sustain the presumption of a grant.

But in any aspect of the case, the mortgagor cannot set up

as a defense to the mortgage, that he had no title to the premises : Penna. Company v. Beaumont, 190 Pa. 101 ; Faucett v. Harris, 185 Pa. 164.

When the defendant here purchased the interest of Matthew Boyd in the unexpired lease to Thomas Withers, he became the owner of only such interest and rights as the judgment debtor possessed.   The defendant had full notice from the record that his father was in possession under a chain of title which purported to vest in him a fee simple estate, and he was also aware that his father had held himself out as the owner of the fee by mortgaging it as such, not only to the present mortgagee, but to others.   The mortgage under which claim of title is made by the present plaintiffs was on record years before the defendant concocted his scheme and obtained his judgments, and made his purchase at sheriff's sale.   As he is a son of Matthew Boyd, he was presumably familiar with the fact of his father's long and exclusive possession of the land in controversy.   We see no reason for allowing to the defendant any higher rights than those possessed by his father.   If the father should be estopped from setting up his want of title against his own mortgage, why should not the son, who claims through the father, be also estopped ?

The evidence of title upon the part of plaintiffs was in accordance with the abstract filed.   Possession under that title was also shown.   If plaintiffs' evidence had stood alone, it would have been sufficient.   The alleged title under the prior lease was set up by the defendant, and the claim of possession adverse to the lease was made, and the presumption of a grant in extinguishment of the lease was set up in rebuttal of defendant's case.   We do not see that this constituted any variance.

The assignments of error are all dismissed and the judgment is affirmed.