### In Re: INCORPORATION OF the BOROUGH OF TREASURE LAKE.

**Treasure Lake Property Owners Association, Inc., Richard Rehermann and William Reznor.**

**Appeal of: Township of Sandy.**

Commonwealth Court of Pennsylvania.

Argued April 19, 2010.
Decided June 30, 2010.

Gregory M. Kruk, Brockway, for appellant.

Michael P. Yeager, Clearfield, for appellees, Treasure Lake Property Owners Association, Inc., Richard Rehermann and William Reznor.

BEFORE: SIMPSON, Judge and BUTLER, Judge and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

In this interlocutory appeal by permission, we are asked if owners of time-shares and campground lots in a planned residential community are residing freeholders eligible to sign a borough incorporation petition under Section 202 of The Borough Code (Borough Code), Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. § 45202. Under the facts of this case, we conclude they are not, and we affirm the order of the Court of Common Pleas of Clearfield County (trial court).

## I. Background

The Borough Code establishes a multi-step process for incorporating a borough. At issue in this appeal is the first part of the process—the petition stage. The petition stage requires incorporators to gather signatures "by a petition signed by a majority of the *freeholders residing* within the limits of the proposed borough." Section 202 of the Borough Code, 53 P.S. § 45202 (emphasis added). This residing freeholders signature requirement is currently at issue. These signatures must be obtained within three months of the filing of the petition.

Section 202 of the Borough Code also requires that an incorporation petition be signed by "the freeholders of a majority of the territory within the limits of the proposed borough." While satisfaction of this territory signature requirement is not at issue, it will be mentioned below.

After the necessary signatures are obtained and the petition is presented to the trial court, a borough advisory committee shall be appointed. The composition of the committee is statutorily established. The committee is required to evaluate the proposed incorporation and advise the trial court. The court must conduct a hearing on the petition and determine whether a preponderance of the evidence establishes the desirability of incorporating the proposed borough. If so, the trial court is required to certify the question of whether the proposed borough should be incorporated to the county board of election for referendum vote.

### A. Treasure Lake

The Township of Sandy, which has a population of approximately 10,000, is a second class township in Clearfield County. Treasure Lake is a privately owned, 8,044 acre, gated community wholly within the township. Approximately half of the Treasure Lake acreage is subdivided and developed. Development continues. Treasure Lake is a mixed use development, presently consisting of: single lots, recreational areas and facilities (lakes, beaches, two golf courses, ski slopes, parks, children's playgrounds, sports fields), commercial areas (shops and four restaurants), roads, a campground, and undeveloped land.

### B. Incorporation Petition and Challenge

Treasure Lake contains 7,125 plotted single family residential lots, of which, 2,044 are improved with residences. Incorporators [1] concluded that owners of lots improved with a taxed residence were residing freeholders and sought their signatures. A majority of these owners, 1,215 of 2,044 individual Treasure Lake lot owners, signed the incorporation petition. The Incorporators filed the petition with the trial court.

For the residing freeholders signature requirement, Incorporators did not obtain signatures from property interest owners in the campground portion of Treasure Lake, called Cayman Landing, or from the townhouse time-share portions of Treasure Lake, called Wolf Run Manor and Silverwoods.

The Township of Sandy (Challenger) [2] challenged the incorporation petition, arguing these other property interest holders were also freeholders. Challenger argued that the incorporation petition lacked signatures from a majority of freeholders

---

1. Incorporators are joined by the Pennsylvania State Association of Boroughs as *amicus curiae.*

2. Township of Sandy is joined by the Pennsylvania State Association of Township Supervisors as *amicus curiae.*

residing within the limits of the proposed borough, thus depriving the trial court of jurisdiction.

### C. Lots and Ownership Interests at Issue

#### 1. Cayman Landing Campground— Individually Owned Lots (Section 19 Lots)

There are 830 distinct, plotted campground lots, of which 590 were separately sold to individuals or families. Each lot owner receives a deed for his lot. Each deed, however, is subject to several restrictions: (1) permanent structures or homes are not permitted; (2) only moveable trailers or recreational vehicles may be used; and (3) the lot may not be occupied for more than 90 consecutive days.

There are additional attributes of the Section 19 lots which are noteworthy for our analysis. The lots have access to five Comfort Centers, which provide water, bathroom, shower and laundry facilities. Only one Comfort Center remains open throughout the year. There is no sewage for individual lots.

Each lot is separately taxed, and taxes are assessed on the land itself. Significantly, none of these assessments include any residential structures on the land. The lot owner individually pays the real estate taxes for his property.

When gathering signatures for the petition. Incorporators treated the owners of Section 19 lots as freeholders (for purposes of the territory signature requirement), but not as residing freeholders (for purposes of the statutory requirement at issue now). Reproduced Record (R.R.) at 71a, 90a–91a, 155a. Incorporators based this distinction on Clearfield County real estate tax records which showed that, consistent with restrictions on the Section 19 lots,

none is improved with structures. R.R. at 95a–96a, 160a–65a.

#### 2. Cayman Landing Campground— Undivided Ownership Interest (UDI Lots)

There are 380 lots available for undivided ownership interest (UDI). UDI purchasers receive a deed for an undivided 1/3000 interest in the whole of these lots. Approximately 1,700 of these interests were sold.

Each deed provides several restrictions. UDI owners may only use recreational vehicles on these lots. Additionally, UDI owners may only stay for 30–day intervals. UDI interests conveyed by deed are transferable and devisable.

UDI owners do not pay taxes on their interest. The Treasure Lake Property Owners Association owns the land that makes up these 380 lots, and an earlier court case rendered these UDI lands exempt from taxation. R.R. at 96a. Similar to the Section 19 lots, the UDI lots do not have any improvements. *Id.*

#### 3. Time-share/Interval Ownership— Wolf Run Manor and Silverwoods

"Wolf Run Manor" and "Silverwoods" are two distinct sections consisting of townhouses located near a ski slope and golf course, respectively. There are a total of 168 units within these two areas.

Wolf Run Manor Corporation sold time-share interests for units in both Wolf Run Manor and Silverwoods. There are a total of 6,489 active accounts (3,690 in Silverwoods and 2,799 in Wolf Run Manor). Each interest is for a one-week interval of ownership, and each deed identifies the particular week of ownership conveyed.[3]

---

**3.** For 15 of the units, all the available weekly interests are owned by a specific owner. The

Wolf Run Manor Corporation retained an interest of one to two weeks in each of the 168 units.

Both Wolf Run Manor and Silverwoods have an owners' association. The owners' associations are responsible for overseeing and maintaining the properties. Wolf Run Manor Corporation conveyed its interest in each unit to the owners' associations. The associations perform maintenance on each unit during the association's period of ownership.

Interest owners pay a yearly fee to their owners' association, which is used to pay maintenance costs and real estate taxes. Interest owners do not pay real estate taxes individually.

### D. Trial Court Proceedings

The trial court conducted hearings on the exceptions. The trial court denied Challenger's exception. The trial court concluded freeholder status required an owner to have the right to exclude others and to exercise control. The trial court held that while the owners may possess their interests for life or greater, deed restrictions and restrictive covenants prevent the owners from having actual continual and uninterrupted ownership. The trial court explained:

> The owners of interests within the particular sections do not have continuing exercise of ownership over their land; rather they have an interrupted exercise of ownership of their land. In addition, they do not exercise control over their lot to the exclusion of all others, because they are required to vacate at delineated time periods, nor are they allowed to improve the land in any manner they choose. Further, the restrictions on the owners go far beyond that of mere re-

deeds to these 15 units do not identify any

strictive covenants on use and are inconsistent with a freehold interest in land. Tr. Ct. Op., Slip Op. at 12–13. Additionally, the trial court reasoned that these restrictions prevent the interest holders from establishing residency in the Borough.

The trial court concluded that a majority of the residing freeholders signed the petition, and it ordered the next stage of the incorporation process to begin. Subsequently, the trial court stayed the appointment of the borough advisory committee pending the resolution of this interlocutory appeal.

Challenger sought interlocutory review of this issue. The trial court certified the case as having a controlling issue of law, and this Court granted permission to address the following issue:

> Does the trial court have jurisdiction, because owners of time-shares and campground lots do not have a continuous uninterrupted exercise of ownership of land and are therefore not "freeholders" eligible to sign an incorporation petition under The Borough Code?

### II. ARGUMENTS

Challenger contends the trial court erred in concluding the owners of these ownership interests were not residing freeholders for the purpose of borough incorporation proceedings. It contends the owners are freeholders because they have estates in land which are not of certain duration but instead are for life or longer. They own their interests in perpetuity. The owned interests have several common attributes: the interests are received by deed; they are transferable and inheritable; owners have exclusive ownership of their interests; owners have exclusive pos-

particular weeks of ownership.

session of their ownership interests; and, the interests are continuing.

In addition, each of the owners can meet the residency requirement. Challenger argues that the residency requirement does not require proof of domicile, and it can be satisfied by an owner living for one day at his property.

Finally, Challenger contends that any restriction on an owner's occupation does not restrict the fact of ownership status.

Incorporators argue in response that the interest holders' ownership interests fall short of the requirements for a freehold. The conveyed interests do not constitute continuous rights of ownership and possession for an indeterminate period, the essential characteristics of freehold estates. In the deed declarations that expressly except and reserve rights to the developer that interrupt periods of ownership and possession, Incorporators see the developer's intent not to convey freehold estates. Incorporators urge us to affirm the trial court's conclusion that jurisdiction under the statute is established.

In reply, Challenger makes several points: Challenger disputes Incorporators' argument regarding the developer's intent; it disputes whether a definition of freehold estate requires a continuous right to possession; it decries Incorporators' failure to fully address the distinction between occupancy and possession; it draws analogies to a borough annexation case; it contends that designation as a campground area does not prevent owners of Section 19 and UDI interests from "residing;" it asserts Incorporators do not adequately address an admission during the hearing that owners of Section 19 interests are "freeholders;" and, it urges a separate analysis of each type of interest.

## III.  DISCUSSION

### A.  Residing Freeholders

By its plain terms, the statutory requirement at issue, "freeholders residing within the limits of the proposed borough," has two components. First, the person whose signature is required must own an estate of freehold. Second, the person must be residing within the limits of the proposed borough.

#### 1.

As to the first component, the General Assembly did not define the term "freeholders" in the Borough Code. "At common law, [a freeholder] was he who has the actual possession of land for life, or a greater estate ...." *In re Mountville Borough*, 31 Pa.Super. 18, 1906 WL 3703 (1905) (quoting *Clippinger v. Creps*, 2 Watts 45, 1833 WL 3364 at *3). Historically, Pennsylvania freehold estates include fee simple and life estates. *Ladner Pennsylvania Real Estate Law*, § 2.02 (Bisel, 5th ed. 2006). Non-freehold estates include an estate for years, estate at will and estate at sufferance. *Ladner* § 2.05. Under Pennsylvania law:

> [T]he key attribute of all freehold estates is the right to create other interests including ownership interests carved out of all or part of the freehold estate. Non-freehold estates do not have that attribute. The holder of a non-freehold estate may have the right to transfer that interest and even the right to create other interests, but there is no right to create an ownership interest in the property.

*Ladner* § 2.05.

#### 2.

Regarding the second component, there is scant appellate court authority on which to rely. In *In re Incorporation of Borough of Pocono Raceway*, 646 A.2d 6 (Pa. Cmwlth.), *appeal denied*, 539 Pa. 658, 651

A.2d 544 (1994) *cert. denied sub nom. Mattioli v. Tunkhannock Township*, 514 U.S. 1064, 115 S.Ct. 1693, 131 L.Ed.2d 557 (1995), this Court held that persons who owned commercial property within a proposed borough which contained no construction other than billboards were not resident freeholders.

An older trial court opinion from Adams County addressed the issue of freeholders residing within the limits of the proposed borough for purposes of incorporation under the statute. In *Carroll Valley Borough Incorporation*, 60 D. & C.2d. 536 (C.P.Adams, 1972), Judge MacPhail (later a judge of this Court), was confronted with a situation where many landowners in the proposed borough only occupied their homes seasonally or on weekends. Judge MacPhail highlighted another trial court opinion [4] that held summer residents with vastly more expensive properties than year-round residents had as much interest in the form of local government. He concluded that a freeholder who lives, however briefly, within the geographical boundaries of the area proposed to be incorporated, must be considered in determining what constitutes a majority of the freeholders for the purpose of incorporation.

In the cases which held persons were residing in a place, there was some structure affixed to the real property which could accommodate human occupancy. Thus, in *Carroll Valley* there were homes. In contrast, in *Pocono Raceway*, where the property had no structures for human habitation, the owners were not residing freeholders.

### B. Cayman Landing Campground— Individually Owned Lots (Section 19 Lots)

■ For the following reasons, we discern no reversible error in the trial court's conclusion that owners of Section 19 lots are not residing freeholders. Initially, we note that the parties act in a manner consistent with the conclusion that owners of these lots are freeholders. Thus, the taxing authorities levy real estate taxes upon, and the owners are responsible for paying, real estate taxes on unimproved land. Also, Incorporators treated the owners of Section 19 lots as freeholders for the territory signature requirement.

Nevertheless, the legal restrictions applicable to the lots, especially the prohibition of permanent structures or homes, and the lack of sewer service, are relevant to the "residing" component of the statutory requirement. Further, consistent with the legal restrictions, the county does not assess any owner of a Section 19 lot for a residential structure, and there is no evidence that any owner pays real estate taxes for a residence. In particular, there is no evidence that Challenger, a taxing authority, treats any owner of a Section 19 lot as having a residence there for tax purposes. Whatever may be on these lots, their owners have not accepted the tax burden associated with a residence, and it was not error for the trial court to treat them in a manner consistent with their real estate tax posture.

### C. Cayman Landing Campground– Undivided Ownership Interests (UDI Lots)

Similarly, we discern no error in the trial court's conclusion that owners of UDI lots are not residing freeholders. The legal restrictions applicable to the lots are more pronounced than those for the Section 19 lots. Like the Section 19 lots, the UDI lots do not have sewer service. Moreover, the owners pay no real estate

---

**4.** *In re: Harvey's Lake Boro. Incorporation* *(No. 1 )*, 57 Luz. 45 (C.P. Luzerne 1966).

taxes whatsoever, not even for the unimproved land. In this sense, neither Challenger nor any other taxing authority treats the owners as freeholders, much less residing freeholders. It was not error for the trial court to treat these owners in a manner consistent with their real estate tax posture.

### D. Interval Ownership–Wolf Run Manor and Silverwoods

■ We discern no error in the trial court's conclusion that owners of timeshare interests are not residing freeholders. Clearly, these interests are less than life estates and fee simple estates, which are the only two types of historical freehold estates still existing in Pennsylvania. *Ladner* §§ 2.02, 2.03. This is because the time-share owners cannot exclude all others from their property for a period of indefinite duration.

Grantees of the Wolf Run Manor and Silverwoods time-shares received finite periods of possession—not a right to exclusive possession continuing for an indefinite period. That these intervals of possession recur annually does not change their noncontinuous, finite character. Even within the 15 units whose available periods are owned by single owner, each unit has a maintenance week during which owners are precluded from using the properties. The respective owners' association holds an ownership interest in that maintenance week.

Also, there is no statute which declares these ownership interests to be freehold estates. Because the time-share interests are not freehold estates at common law, and no statute declares them to be freehold estates under statutory law, there is no legal authority for this Court to declare the owners freeholders.

Significantly, the parties act in a manner consistent with the conclusion that the owners of interval interests are not freeholders. Thus, the timeshare owners do not pay real estate taxes; rather, real estate taxes are levied upon and paid by the owners' associations. *See Townsend v. Boyd,* 217 Pa. 386, 66 A. 1099 (1907); *Ladner* § 2.05(a) (estate for years, a less than freehold estate because it is held for a specified, definite period of time, is personal property, not real property). It was not error for the trial court to treat the timeshare owners in a manner consistent with their real estate tax posture.

### E. Disenfranchisement

■ We also reject Challenger's assertion that being counted as freeholders is the only opportunity for these various interest holders to participate in the incorporation debate. The trial court is required to conduct hearings on the merits of incorporation. These hearings will provide the interest holders with an opportunity to present their views on the merits of incorporation Treasure Lake as a Borough.

### IV. CONCLUSION

The incorporation process is at a preliminary stage. Incorporators successfully obtained the signatures of a majority of residing freeholders, and the trial court took appropriate steps to continue that process. The statutory process provides ample opportunity for the interest holders at issue in this case to express their views as the merits of incorporating this private development as a borough.

For all the above reasons, we affirm the order of the trial court and remand the matter for further proceedings.

### *ORDER*

**AND NOW,** this 30th day of June, 2010, the order of the Court of Common Pleas of Clearfield County in the above captioned

matter is **AFFIRMED.** The case is remanded for further proceedings consistent with this opinion.

Jurisdiction is relinquished.