## Dalzell *against* Lynch.

4 WS 255
24 SC 177
4 WS 255
217   394

A lease for a term of years is the subject of levy and sale upon a *fieri facias*, without inquisition and condemnation.

ERROR to the District Court of *Allegheny* county.

This was an action of ejectment by Francis Lynch against William Dalzell, in which the plaintiff, *inter alia*, gave in evidence the record of a judgment against William Dalzell, a *fieri facias* issued upon it and a levy upon the house and lot in controversy, describing it as being " a leasehold property, with some nine or ten years to run." The property was sold by the sheriff upon the *fieri facias*, and he made a deed to the plaintiff for it, which was regularly acknowledged in open court. Upon the trial of the cause the plaintiff offered this deed in evidence; it was objected to by the defendant on the ground that there was no inquisition upon or condemnation of the property. The same question was raised in a point put to the court by the defendants.

Judge Shaler overruled the objection to the evidence; and after a careful examination of the subject and the peculiar phraseology of our Acts of Assembly on the subject of taking lands in execution, ruled the point against the defendant. Verdict and judgment accordingly.

*Dunlop*, for plaintiff in error, referred to the *Act of Assembly of 16th of June* 1836, *tit.* " *Execution*," which uses the words " real estate," instead of " lands, tenements and hereditaments," and requires that an inquisition should be held. A leasehold is extendable in England as land under the statute on a writ of *elegit*. 3 *Inst.* 340, 395 ; *Wood's Inst.* 606 ; 4 *Com. Dig. Execution, c.*; *Bing. on Executions* 110. The words " real estate," used in the statutes against champerty, were construed to embrace terms for years. *Plowd.* 87, 418. The Act of Assembly which provides the remedy by which the sheriff's vendee may obtain possession, employs the words " real estate sold as aforesaid," so that unless these terms embrace a lease for years, this Act does not provide a remedy for obtaining possession of such an estate. See *sec.* 105.

*M'Candless, contra.* The estate levied and sold has not that permanence which the law intended to protect from sale; it is the lowest grade of estate, and one which may terminate before the seven years mentioned in the Act; for if there must be an inquisition and condemnation of a term of ten years, the same interpretation of the law would require a condemnation of a term of two

[Dalzell v. Lynch.]

years: in such case we should have a jury to inquire whether an estate would pay the encumbrances in seven years, which by the terms of its creation can only endure two years; and if delivered to the creditor upon a *liberari facias*, he cannot enjoy it. There is less reason for requiring an inquisition than in the case of an estate for life, where it is not required. 2 *Binn.* 91. Besides this, the estate is subject to a re-entry by the landlord under certain circumstances. If the legislature had intended to introduce a new principle of so much importance, they would have used language plainly indicating such intention.

PER CURIAM.—It is said by Lord Coke, in his annotations on the British statute, that a term for years *has* been extended by force of the words *medictatem terræ suæ;* but he has not said that such was the practice in his day, and indeed it would have been strange had a term been treated as land for the purposes of an *elegit*, and as a chattel for the purposes of a common law extent, or of a *fieri facias*. A lessee for years is not seised, nor is he a terre-tenant; and the land of which he is barely possessed, cannot be called his in the technical, more than it can in the popular sense. But whatever may have been the practice under the British statute, it is certain, that none such as that supposed to have been intimated by Lord Coke, has prevailed under our own; and a practical interpretation for more than a century would alone be decisive of the question. But it is evident that any other than the one we have adopted, would have been inconsistent with the design of the legislature. A term for years is a chattel which might always be sold on a common law execution; and our statute, which is an enabling and not a disabling one, was intended to subject land to sale for payment of debts in the aspect in which it had before been exempted. It left the writ of *fieri facias*, as to chattels, exactly where it found it. There was no motive to burthen a leasehold interest, which is usually of little value beyond the rent reserved, with the costs of an inquisition; and that estates of freehold were subjected to execution only *sub modo*, arose from a lingering regard for feudal prejudices. There is reason to think that the penmen of our early statutes, who seem to have been bred to the law and more familiar with black-letter than the lawyers of our day, were peculiarly heedful of accuracy in the use of technical words; and it is said in the *Touchstone* (*page* 92), on the authority of *Brooke* (*Done* 41), that leases for years do not pass by a general grant of lands, though it seems they may be comprehended with the assistance of special description, or by force of the context. There is no reason to think the legislature meant to give that word a more extended meaning; and the admission of the sheriff's deed, as well as the direction consequent on it, was entirely proper.

Judgment affirmed.