## Hoffman et al. v. Irwin

*Q. D. Hastings* and *M. P. Breene*, for plaintiffs.
*John F. Budke* and *Forest B. Irwin*, for defendant.

McCracken, P. J., January 21, 1935.—Taylor Hoffman died on November 7, 1930, seized and possessed of an undivided three-fourths interest in a certain leasehold by virtue of a lease which reads in part as follows: "Witnesseth, that the said party of the first part for and in consideration of the sum of one dollar to him in hand paid by the party of the second part, the receipt whereof is hereby acknowledged, and of the covenants and agreements hereinafter mentioned, has granted, demised, and let unto the said party of the second part three-fourths the oil, petroleum and gas in under or upon that certain tract of land hereinafter described and also all the said tract of land for the purpose and with the exclusive right of drilling and operating thereon and thereunder for said oil, petroleum and gas. . . . To have and to hold the same unto the said party of the second part, his heirs and assigns for the term and period of five years from the date hereof and as much longer as oil and gas is found in paying quantities thereon."

The will of the said Taylor Hoffman appointed his widow as executrix of his estate. For some undisclosed reason she resigned, and the Lamberton National Bank was appointed administrator c. t. a. This administrator sold the property at public sale to Clyde L. Irwin, the

defendant, and the plaintiffs have brought an action of ejectment to recover the premises described in the declaration filed. At the time of said sale the estate of Taylor Hoffman was solvent. The third paragraph of Taylor Hoffman's will provides as follows: "To my sons, Harry Hoffman, John Martin Hoffman, Henry Earl Hoffman, Raymond Clair Hoffman, Marshall Hoffman, and Lottie Donaldson, all the balance of my property, both real and personal, and direct that they divide the same equally, share and share alike." The plaintiffs claim interests in the premises hereinbefore mentioned by reason of the provisions in the said will and various assignments. Notice of the claim of the plaintiffs was served upon the defendant and the above-named administrator prior to the sale.

## Statement of the question involved

Will a public sale by an administrator c. t. a., while the estate is solvent, of the interest in land created by the instrument herein referred to and commonly called an "oil and gas lease" pass title to the purchaser thereof who has notice that heirs of a decedent contend that the property sold is real estate and therefore not subject to sale except for the payment of debts?

## Discussion

Crude oil or petroleum as a commercial product in substantial quantities was first discovered and produced in this county, and oil and gas leases originated here. Naturally it was a venture in a new industry and the instruments drawn for the purpose of permitting operations therefor were not carefully considered, and in fact in their execution new law was being made, or new applications of the old law with respect to landlord and tenant. The so-called leases drawn in the early days were from their wording to all intents and purposes deeds of conveyance. However, neither the oil fraternity nor the courts have construed them as other than a right or license which one party obtained in the property of an-

other. These conveyances have been before the courts for interpretation and the line of demarcation seems to be drawn as to whether or not a party was given a mere license to go upon the premises for certain purposes, or was granted an interest in the oil itself for a certain definite period. In the former case the instrument was known as a license, and in the latter case, a lease. The difficulty and confusion, if there is such, seems to arise over the nature of the right granted; that is, whether or not it is real estate. In 2 Blackstone's Commentaries (Lewis' ed.) 481, real estate is defined as follows: "Things *real* are such as are permanent, fixed, and immovable, which cannot be carried out of their place; as lands and tenements."

Quoting from the same author:

"*Land* comprehends all things of a permanent, substantial nature; being a word of a very extensive signification. . . . *Tenement* is a word of still greater extent, and though in its vulgar acceptation it is only applied to houses and other buildings, yet, in its original, proper, and legal sense, it signifies everything that may be *holden*, provided it be of a permanent nature; whether it be of a substantial and sensible, or of an unsubstantial ideal kind. . . . But an *hereditament*, says Sir Edward Coke, is by much the largest and most comprehensive expression: for it includes not only lands and tenements, but whatsoever may be *inherited*, be it corporeal or incorporeal, real, personal, or mixed. . . .

"Hereditaments then, to use the largest expression, are of two kinds, corporeal and incorporeal. Corporeal consist of such as affect the senses; such as may be seen and handled by the body: incorporeal are not the object of sensation, can neither be seen nor handled, are creatures of the mind, and exist only in contemplation.

"Corporeal hereditaments consist wholly of substantial and permanent objects; all which may be comprehended under the general denomination of land only."

On page 487 the same author gives the following definition:

"An incorporeal hereditament is a right issuing out of a thing corporate (whether real or personal) or concerning, or annexed to, or exercisable within, the same. It is not the thing corporate itself, which may consist in lands, houses, jewels, or the like; but something collateral thereto, as a rent issuing out of those lands or houses, or an office relating to those jewels. In short, as the logicians speak, corporeal hereditaments are the substance, which may be always seen, always handled: incorporeal hereditaments are but a sort of accidents, which inhere in and are supported by that substance; and may belong or not belong to it, without any visible alteration therein. Their existence is merely in idea and abstracted contemplation; though their effects and profits may be frequently objects or our bodily senses. And indeed, if we would fix a clear notion of an incorporeal hereditament, we must be careful not to confound together the profits produced, and the thing, or hereditament, which produces them."

We quote further from 2 Blackstone Com. at page 562:

"Tenant in fee-simple (or, as he is frequently styled, tenant in fee) is he that hath lands, tenements, or hereditaments, to hold to him and his heirs forever: generally, absolutely, and simply; without mentioning *what* heirs, but referring that to his own pleasure, or to the disposition of the law. The true meaning of the word fee *(feodum)* is the same with that of feud or fief, and in its original sense it is taken in contradistinction to *allodium;* which latter the writers on this subject define to be every man's own land, which he possesseth merely in his own right, without owing any rent or service to any superior. This is property in its highest degree; and the owner thereof hath *absolutum et directum dominium,* and therefore is said to be seised thereof absolutely *in dominico suo,* in his own demesne. But *feodum,* or fee, is that which is held of some superior, on condition of render-

ing him service; in which superior the ultimate property. of the land resides. . . .

"This is the primary sense and acceptance of the word *fee*. . . . A *fee* therefore, in general, signifies an estate of inheritance; being the highest and most extensive interest that a man can have in a feud: . . .

"Taking therefore *fee* for the future, unless where otherwise explained, in this its secondary sense, as a state of inheritance, it is applicable to, and may be had in, any kind of hereditaments either corporeal or incorporeal. But there is this distinction between the two species of hereditaments: that, of a corporeal inheritance a man shall be said to be seised *in his demesne, as of fee;* of an incorporeal one, he shall only be said to be seised *as of fee*, and not in his demesne. . . .

"The fee-simple or inheritance of lands and tenements is generally vested and resides in some person or other; though divers inferior estates may be carved out of it. As if one grants a lease for twenty-one years, or for one or two lives, the fee-simple remains vested in him and his heirs; and after the determination of those years or lives, the land reverts to the grantor or his heirs, who shall hold it again in fee simple."

In the foregoing quotations the author is discussing freehold estates of inheritance. We quote from the same author where, on page 603 of Book 2, discussing estates not of inheritance he states as follows: "An estate for *years* is a contract for the possession of lands or tenements for some determinate period; and it takes place where a man letteth them to another for the term of a certain number of years, agreed upon between the lessor and the lessee, and the lessee enters thereon."

We have in the above quotations sought to define in part the distinctions in real estate as defined by Blackstone insofar as they are applicable to the present case. In addition to the characteristics affixed to land there are others involved in the present question and we will

refer to the same author for our definitions and discussion thereof on page 846:

"Chattels *real*, saith Sir Edward Coke, are such as concern, or savor of, the realty; as terms for years of land, wardships in chivalry, . . . the next presentation to a church. . . . And these are called real chattels, as being interests issuing out of, or annexed to, real estates: of which they have one quality, viz., immobility, which denominates them *real*; but want the other, viz., a sufficient, legal, indeterminate duration; and this want it is that constitutes them *chattels*. The utmost period for which they can last is fixed and determinate, either for such a space of time certain, or till such a particular sum of money be raised out of such a particular income; so that they are not equal in the eye of the law to the lowest estate of freehold, a lease for another's life: their tenants were considered upon feodal principles as merely bailiffs or farmers".

We find the following definition in 11 C. J. 385:

"Chattels real are interests which are annexed to or concern real estate, as estates for years, at will, by sufferance, from year to year, and various interests of uncertain duration. Chattels real are to be distinguished from a freehold, which is realty. A freehold is an estate for life or in fee; a chattel real, for a less estate. Any estate in lands which does not amount to a freehold is, however, a chattel real."

We thus see that at common law the highest estate in land was a freehold whereby the owner had absolute dominion and owned and possessed every right incident thereto. Out of this freehold estate there might be created a number of other interests each one of which formed a component part of the larger estate, but of which the interest created was only an incident.

Leases for oil and gas purposes undoubtedly originated in this county in the early days of the development of the oil industry. Today the production of oil and gas is one of the larger, if not the largest enterprise in the county,

and from the first discovery of oil there has been much activity in the production thereof. Hence there have grown up certain conceptions relative to the legal status of these instruments, and in addition thereto the appellate courts have placed certain interpretations thereon. Leases for oil and gas purposes have always been considered personalty in the settlement of decedents' estates and have been placed in the inventory and appraisement along with other personal property. Also leases of the character in the instant case have not descended to the heirs of a deceased owner but rather have passed to the legal representative of his estate as assets for the payment of debts or distribution. A very large portion of the land in this county has been and now is under lease for the purpose of producing oil or gas. Many of these instruments have been assigned and very rarely has the wife of the assignor been requested to sign, and in very few instances has it been considered necessary for her to execute the same since it has been the tacit opinion of the bar during the many years of activity in oil matters that there was no inheritable interest in oil leases.

In Kile, Sheriff, v. Giebner, 114 Pa. 381, the defendant brought an action against the plaintiff, who was the Sheriff of Mercer County, to recover damages for seizing and selling a certain sawmill with engine, boiler, etc., upon a writ of fieri facias against one W. E. McDonald. The sawmill was situate upon a leasehold property owned by McDonald, was permanently attached to the leasehold in the usual manner, and was in the use and occupancy of McDonald in connection with the leasehold in the manufacture of lumber at the time of the levy. The above-named defendant claimed that he had bought the sawmill on said leasehold in September preceding the date of the sheriff's sale. Quoting from the opinion on page 385:

"The sheriff's levy was upon 'all the right, title, etc., of the defendants, of, in and to their leasehold interest in two lots of ground in Sandy Lake borough, Mercer county, Pennsylvania . . . on which is erected a station-

ary steam saw mill, with engine and boiler, saw and log carriage, and lumber car, and all other fixtures about same, in good running order.'. . . .

"It is well settled that a lease of lands for a term of years may be sold on a *fieri facias*, as personal and not real property. . . . It is equally well settled that fixtures erected by the tenant on the demised premises, for the purpose of carrying on his trade, being accessory to the enjoyment of the term, are also personal property during the continuance of the term."

Of like tenor is Dalzell v. Lynch, 4 W. & S. 255, the syllabus of which reads as follows: "A lease for a term of years is the subject of levy and sale upon a *fieri facias*, without inquisition and condemnation." In support of this proposition the syllabus of Sowers v. Vie, 14 Pa. 99, states the law as follows: "A sheriff's deed for leasehold premises need not be acknowledged, nor is it necessary that there be a deed at all. His return is evidence of the sale of a chattel, whether real or personal."

We have thus seen that the writing in question is a chattel real and as such partakes of the nature of both real and personal property. We have heretofore discussed its features as personal property. Likewise it has certain features of realty. In Barnsdall v. Bradford Gas Co., 225 Pa. 338, the first paragraph of the syllabus reads as follows:

"Where an instrument in writing does 'grant, demise, lease and let unto the said party of the second part . . . all that certain tract of land . . . containing 100 acres, . . . for the sole and only purpose of mining and operating for oil, gas and other minerals and of laying pipe lines and of building tanks, stations and structures thereon to take care of the said products,' the paper creates a corporeal interest in the lessee in the demised premises and is not merely a license to enter and operate for oil and gas; and the lessee although he never entered into possession of the premises may maintain an action

to recover possession from a third party not claiming under the lessor."

The action in the case last cited was ejectment, and the question in issue was whether or not the plaintiff could maintain the same. On page 343 the court quotes with approval from Titusville Novelty Iron Works' Appeal, 77 Pa. 103, as follows:

"A lease of land during the term is as fixed as the land itself, for it can only be used upon the land out of which it arises. It is nothing more or less than a right to use a freehold for the term mentioned in the lease. It is therefore an estate in land."

The decision in the Barnsdall case along with other cases of similar import simply decides that a lessee has such an interest in the land leased as will permit him to maintain an action of ejectment.

In De Witt's Estate, 266 Pa. 548, the Commonwealth of Pennsylvania was seeking to tax a certain leasehold upon lands in West Virginia, and the syllabus thereof reads as follows:

"Where an instrument in writing demises and leases certain lands for the 'sole and only purpose of mining and operating for oil and gas' for a term of years and at a fixed rent, with the right to lay pipe lines and erect buildings thereon for mining purposes, such instrument conveys an interest in land, 'a corporeal hereditament and not an incorporeal hereditament,' and if the lands are situated in another state, they are real estate not subject to the Pennsylvania direct inheritance tax."

This decision likewise shows the character of a leasehold interest as savoring of and being incident to real estate. Such an estate is immovable, fixed, and confined to one location and is not susceptible of manual transfer or conveyance and hence is taxable only in the place of its situs.

It appears that the plaintiffs in the instant case notified all purchasers at the sale of the leasehold, including the above-named defendant and also the administrator

c. t. a., that they desired to take said leasehold in kind, but despite their desire thus expressed the said property was disposed of and the same reduced to cash. From the authorities heretofore cited we note that the leasehold is not a freehold estate and therefore not inheritable, but rather a chattel real and as such passed to the legal representative of the decedent for distribution to those entitled thereto under and by virtue of the will of Taylor Hoffman. By reference to the third paragraph of the said will hereinbefore recited, it appears that the parties therein named are residuary legatees and not devisees. In other words, they were not given under the terms of the will a certain specific property. The leasehold herein described, being personal property, vested upon the death of Taylor Hoffman in his legal representative for the purpose of administration to those entitled thereto under and by virtue of the terms of his will. The primary duty of such representative is to administer the estate and in order to do so it is its undoubted right to convert the estate or to reduce it to such form as will prevent a depreciation in value and a consequent loss. While we know of no reason why an administrator should refuse to distribute the assets of a decedent's estate in kind where such distribution is desired and requested by the distributees, yet that such fiduciary has the right to refuse to do so is undoubted. If those entitled to share in the estate are injured or damaged thereby, objections should be made upon distribution, or action brought against the administrator. We are convinced that in the instant case the administrator c. t. a. acted within its rights.

And now, January 21, 1935, for the reasons herein given the prothonotary is directed to enter judgment for the defendant upon the pleadings for the land described in the plaintiffs' petition and writ issued in this case.